IN THE COURT OF APPEALS OF NORTH CAROLINA

 [do not modify or remove this line]

 No. COA20-384

 Filed: [do not modify or remove this line]

Durham County, No. 17 CVS 3710

DUNHILL HOLDINGS, LLC, Plaintiff/ Counterclaim Defendant,

 v.

TISHA L. LINDBERG, Defendant/ Counterclaim Plaintiff,

TISHA L. LINDBERG, Third-Party Plaintiff,

v.

GREG LINDBERG, Third- Party Defendant.

 Appeal by plaintiff/ counterclaim defendant and third-party defendant from

order entered 1 August 20201 by Judge Orlando F. Hudson, Jr. in Superior Court,

Durham County. Heard in the Court of Appeals 27 April 2021.

 Fox Rothschild LLP, by Matthew Nis Leerberg and Kip D. Nelson, for
 plaintiff/counterclaim defendant-appellant and third-party defendant-
 appellant.

1 This 2020 date reflects the file stamp on the order on appeal, but the order was actually rendered in

2019. No party disputes this. We know the date of the order’s rendering was 2019 because the original
and amended notices of appeal from the order are all from August 2019.
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 Zaytoun Ballew & Taylor, PLLC, by Matthew D. Ballew, Robert E. Zaytoun,
 John R. Taylor, and N. Cole Williams for defendant/ counterclaim plaintiff,
 third-party plaintiff-appellee.

 STROUD, Chief Judge.

¶1 Appellants, Dunhill Holdings, LLC (“Dunhill”) and Greg Lindberg, appeal from

 an order imposing sanctions on them for discovery violations and, pursuant to a

 previous opinion from this Court in this case, from a discovery order requiring them

 to submit their electronic devices for forensic examination. Because we find the trial

 court did not abuse its discretion in imposing sanctions and did not err in its choice

 of sanctions in most respects, we affirm in part. We vacate in part and remand

 because two paragraphs of the ordered sanctions are inconsistent with the remainder

 of the order or improperly bar objections, including objections for attorney-client

 privilege. Finally, since we affirm the relevant parts of the sanctions order, we

 dismiss the forensic examination issue as moot.

 I. Background

¶2 This is the second appeal to this Court in this case. The first appeal concerned

 an order from 27 June 2018 (“June 2018 Order”) that, inter alia, ordered Appellants

 to make certain electronic devices available for a forensic examination to determine

 if any relevant emails were deleted. Dunhill Holdings, LLC v. Lindberg, No. COA18-

 1112, 270 N.C. App. 820, *7, *10–11 [hereinafter “Dunhill I”] (unpublished). The

 -2-
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 prior appeal dismissed the case “without deciding whether the appeal [was] an

 interlocutory appeal that does not affect a substantial right” and “refer[red the

 forensic examination issue] to the panel of this Court that will decide Dunhill and

 Greg E. Lindberg’s appeals of the discovery order and the sanctions order together.”

 Dunhill I at *12. Based upon the prior opinion, this panel must address the sanctions

 order, and we will also address the discovery order at issue in the prior appeal. 2 Id.

 The prior ruling from this Court is the law of the case and thus binds us. See, e.g.,

 North Carolina Nat. Bank v. Virginia Carolina Builders, 307 N.C. 563, 567, 299

 S.E.2d 629, 631 (“[O]nce a panel of the Court of Appeals has decided a question in a

 given case that decision becomes the law of the case and governs other panels which

 may thereafter consider the case.”). We therefore recount the facts and procedural

 history from Dunhill I and only include additional details where necessary to

 understand the sanctions order that was not before this Court in the prior appeal.

¶3 Dunhill I summarizes the initiation and pre-discovery occurrences in this

 lawsuit:

 Dunhill Holdings, LLC (“Dunhill”) filed a complaint
 against Tisha L. Lindberg, as well as four former
 employees of Dunhill on 24 July 2017.[3] According to

 2 We also note that both Dunhill and Mr. Lindberg specifically incorporated the arguments made in

 their prior appeal through footnotes in their briefs in this appeal, thereby avoiding any potential
 preservation issue.
 3 In November 2017, the trial court granted each of the four employees’ motions to dismiss for failure

 to state a claim pursuant to Rule of Civil Procedure 12(b)(6). N.C. Gen. Stat. § 1A-1, Rule 12(b)(6)
 (2017).

 -3-
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

Dunhill, the company is owned by Greg E. Lindberg, who
is “the founder and sole manager and member of Dunhill.”
Greg E. Lindberg and Tisha L. Lindberg married on 19
September 2003 and separated on 22 May 2017. In its
amended complaint filed 24 August 2017, Dunhill
described Tisha L. Lindberg as Dunhill’s “Chief Executive
Officer”; however, she denied this characterization in her
answer, saying that “while [Mr.] Lindberg purported to call
[her] the ‘C.E.O.’ of [Dunhill] on occasion, [Dunhill] never
employed [Tisha L.] Lindberg in any capacity and [Dunhill]
was merely a vehicle through which [Greg E.] Lindberg
funded the personal lifestyle of the parties and their family
. . . .”
 Dunhill described itself as a “real estate holding
company” in its amended complaint and the primary asset
owned by Dunhill was the family home of Greg E. Lindberg
and Tisha L. Lindberg on Stagecoach Drive in Durham,
North Carolina. In its amended complaint, Dunhill claimed
Tisha L. Lindberg took funds from Dunhill and it asserted
claims against her for breach of fiduciary duty,
constructive fraud, civil liability for theft and
embezzlement, civil conspiracy, conversion and an action
for accounting, in addition to claims for unjust enrichment,
disgorgement, and civil conspiracy against the other
Defendants.
 In her answer, Tisha L. Lindberg moved to dismiss
Dunhill’s complaint for failure to state a claim for which
relief may be granted under N.C. Gen. Stat. § 1A-1, Rule
12(b)(6), denying various allegations of Dunhill and
asserting affirmative defenses of breach of fiduciary duty
by Greg E. Lindberg, fraud, constructive fraud, equitable
estoppel, waiver, ratification, actual authority, and laches.
 She also filed a third-party complaint against Greg
E. Lindberg and counterclaim against Dunhill, seeking “all
right, title, and interest in the Key West House” and “all
right, title, and interest in the tennis complex” Greg E.
Lindberg allegedly promised to give her. Tisha L. Lindberg
subsequently filed an amended third-party complaint
against Greg E. Lindberg and a counterclaim against

 -4-
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 Dunhill, asserting breach of fiduciary duty, constructive
 fraud, indemnity, declaratory relief, abuse of process,
 malicious prosecution, intentional infliction of emotional
 distress, spoliation of material evidence, and for a
 constructive trust over the tennis court.
 In her amended third-party complaint and
 counterclaim, Tisha L. Lindberg alleged Dunhill was
 merely an “alter-ego” of Greg E. Lindberg and was
 therefore liable for his actions. Dunhill and Greg E.
 Lindberg did not file an answer to Tisha L. Lindberg’s
 counterclaim and third-party complaint or her amended
 counterclaim and third-party complaint, instead filing a
 motion to dismiss each complaint.

 Dunhill I at *2–4. These motions to dismiss were later denied.

¶4 Before Appellants’ motions to dismiss had been ruled on, Dunhill and Ms.

 Lindberg proceeded with discovery:

 Dunhill served Tisha L. Lindberg with its first request for
 production of documents on 24 October 2017 and she
 replied with objections and responses on 22 December
 2017. On 26 February 2018, Tisha L. Lindberg submitted
 her first set of interrogatories and request for production of
 documents to Greg E. Lindberg and Dunhill. Dunhill
 moved to compel discovery on 9 March 2018. Tisha L.
 Lindberg filed a motion to compel discovery and request for
 attorney’s fees on 21 May 2018.

 Dunhill I at *4. In relevant part, Ms. Lindberg’s discovery requests included

 interrogatories, requests for document production, and a request for production for

 forensic inspection of all electronic storage devices owned by Appellants “that [are]

 the repository for electronic messaging and communication.” Appellants made a

 series of objections to the discovery requests. In response to the forensic examination

 -5-
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 request specifically, both parties objected:

 In his responses, Greg E. Lindberg responded as follows to
 this request:

 Third Party Defendant objects to Request No. 23 on
 the ground that it is harassing, overly broad, unduly
 burdensome, not proportional to the needs of this
 case, not reasonably calculated to lead to the
 discovery of admissible evidence, and seeks
 information that is not relevant to the subject
 matter of the pending action.

 Third-Party Defendant further objects to Request
 No. 23 on the ground that, on its face it seeks
 production of records that are confidential or
 privileged, including records that are protected by
 the work product and attorney-client privileges, and
 violates the privacy rights of third persons who are
 not parties to this lawsuit.

 Dunhill made an identical response to this request.

 Dunhill I at *5.

¶5 Ms. Lindberg’s motion to compel discovery argued the court should reject the

 objections proffered by Mr. Lindberg and Dunhill. In response to objections to the

 forensic examination, Ms. Lindberg argued she needed the examination to support

 her spoliation of evidence claim:

 Upon information and belief, Mr. Lindberg and Dunhill
 have intentionally attempted to destroy evidence from
 computers and electronic devices that is relevant to this
 matter. The spoliation of evidence by Mr. Lindberg and
 Dunhill was set out in the pleadings in this matter in Mrs.

 -6-
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 Lindberg’s[4] Amended Counterclaims and Third-Party
 Complaint. For example, upon information and belief, Mr.
 Lindberg and Dunhill destroyed emails and computer files
 maintained by Mr. Lindberg’s companies soon after Mr.
 Lindberg took out the Ex Parte Domestic Violence
 Protective Order and restricted her access to email servers.
 Requests for Inspection 23 and 24 to Dunhill and Requests
 for Inspection 23 and 24 to Greg Lindberg seek to inspect
 the computers, drives and devices of Mr. Lindberg and
 Dunhill, but they have refused to allow for this inspection.
 Mrs. Lindberg respectfully requests that the Court order
 such a forensic computer inspection.

 Ms. Lindberg’s spoliation claim in turn argued, inter alia, that Mr. Lindberg had

 deleted emails showing he gifted the tennis complex to Ms. Lindberg, thereby

 supporting her third-party claim for a constructive trust over the tennis complex.

¶6 The trial court heard the motions to compel from Ms. Lindberg and from

 Dunhill on 25 June 2018. As of the time of the hearing, neither Dunhill nor Mr.

 Lindberg had produced “a single document in discovery.” Much of the hearing focused

 on the forensic examination issue, and Ms. Lindberg continued to argue that the

 forensic examination would support her spoliation claim as well as her claim the

 tennis complex was a personal gift.

¶7 Ms. Lindberg also argued the forensic examination would support her on two

 other liability issues. First, she argued the forensic examination would uncover

 4 This document and many of the documents from this litigation refer to Appellee Tisha Lindberg as

 Mrs. Lindberg whereas throughout this opinion we refer to her as Ms. Lindberg. We refer to Tisha
 Lindberg as Ms. Lindberg because the briefing in this case referred to her with that title.

 -7-
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 deleted emails that would prove she did not improperly take funds from Dunhill.

 Second, Ms. Lindberg argued the deleted emails would support her claim for

 indemnification from Mr. Lindberg as to a deposit for a yacht vacation that Ms.

 Lindberg claims she made on behalf of Mr. Lindberg.

¶8 On 27 June 2018, the court entered orders compelling discovery by Ms.

 Lindberg and Appellants, awarding attorney’s fees to each side, and ordering the

 forensic examination. In the order granting relief to Ms. Lindberg, i.e. the June 2018

 Order, the trial court rejected all but one of Appellants’ objections to Ms. Lindberg’s

 discovery requests, and the one sustained objection is not relevant here. The trial

 court specifically concluded that, other than the one objection it sustained and the

 forensic examination objection, “all of the objections raised by Dunhill Holdings LLC

 and Greg Lindberg lack merit, fail to justify the refusal and failure to produce a single

 discoverable document as of the date of this hearing, and were interposed for an

 improper purpose of delay and avoiding any meaningful response.” As a result the

 June 2018 Order required Appellants to “fully and completely reply to each and every

 Interrogatory and discovery request for production of documents,” with the exception

 of the one for which an objection was sustained, by 1 August 2018. To make clear

 which documents were covered, the June 2018 Order fully incorporated by reference

 the requests for discovery and Appellants’ responses.

¶9 The June 2018 Order also granted Ms. Lindberg’s request for a forensic

 -8-
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

examination with certain limitations:

 In the order, the trial court found as follows:

 As to the request for a forensic examination of
 certain electronic devices, the Court . . . finds that
 there are circumstances whereby a forensic
 examination of the server housing the outlook email
 accounts used by the parties to this action during the
 time frame reaching back to the [] period when
 contested contentions of gifts of real estate valued in
 excess of one million dollars arose, would be
 beneficial in the ascertainment of truth. Such a
 forensic examination would disclose or shed light
 upon the question of whether or not there exists or
 existed crucial and relevant documentation that one
 party contends existed but was “scrubbed” and the
 other party conten[d]s never existed. . . . The Court
 further finds that considering the resources of the
 parties, a forensic examination of the server itself
 would not unduly burden or obstruct Dunhill
 Holdings LLC in its operations, nor has any credible
 evidence been presented that it would unduly
 interrupt or interfere with operations of any of the
 other LLC entities connected to Dunhill that may
 have possession of the server used by the parties to
 this litigation. There is some evidence that the
 server may be “owned” by a subsidiary, but all of the
 evidence shows that any other entity having such an
 interest exists under the control of Mr. Lindberg. . .
 . The concern about disclosing any confidential or
 privileged information is unsupported by any
 credible evidence or argument, and the inquiry in
 the forensic analysis can be conducted to [sic] a[s] to
 obviate any prejudice to Dunhill or to Mr. Lindberg
 should any such attorney-client privileged data be
 present.

 The trial court concluded that:

 -9-
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 The objection to the request for a forensic
 examination should be overruled for the reasons set
 forth in the findings [] above. The Court is
 authorized to order a forensic examination after
 weighing and balancing the burdens and rights of
 the parties and the Court finds that the balancing as
 to those findings clearly show in this case that such
 an examination is justified, will serve the best
 interests of both parties, and not pose an undue
 burden on any party.

The trial court ordered that Dunhill and Greg E. Lindberg
“shall make the server or any electronic device housing,
hosting, or storing the outlook email account used by the
parties available for a forensic examination,” limited to the
following purposes: (1) whether any emails or text
messages between Greg E. Lindberg and Tisha L. Lindberg
ever existed, and producing copies of them; (2) whether
emails or text messages “dealing with real estate holdings
subject to dispute in this lawsuit exist or ever existed, and
producing copies of the same for the parties;” and (3)
whether any of those messages “if there were any, have
been intentionally deleted, and, if deleted, the
circumstances of any deletion and whether or not they can
be recovered.” In its order, the trial court further provided
for the protection of arguably privileged communications
as follows:

 Out of an abundance of caution, if there is a
 contention that a document or communication is a
 communication exclusively between Greg E.
 Lindberg and an attorney actually representing him,
 and the communication does not include any third
 person for whom the privilege is unavailable, that
 objection may be renewed provided the specific
 communication is specifically identified and the
 basis for the objection and assertion of the privilege
 is clearly articulated.

 - 10 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 Dunhill I at *5–7 (alterations in original).

¶ 10 Dunhill and Mr. Lindberg appealed the June 2018 Order. Dunhill I recounts

 most of the appellate history:

 Dunhill and Greg E. Lindberg filed notice of appeal
 of the order on 17 July 2018. They also filed a motion for
 stay with the trial court. Tisha L. Lindberg filed a motion
 to disregard the notice of appeal and to continue case
 proceedings with the trial court, along with a response to
 the motion for stay. The trial court granted Tisha L.
 Lindberg’s motion to disregard notice of appeal and denied
 Dunhill and Greg E. Lindberg’s motion for stay on 24
 August 2018. Dunhill and Greg E. Lindberg filed a petition
 for writ of supersedeas with this Court on 4 September
 2018, that was denied in part with certain exceptions on 12
 September 2018.

 Dunhill I at *7–8.

¶ 11 Following this Court’s denial of a petition for writ of supersedeas, Mr. Lindberg

 and Dunhill filed a Petition for Writ of Supersedeas and Motion for Temporary Stay

 in the Supreme Court of North Carolina. While that Petition was pending, Ms.

 Lindberg filed two motions to dismiss the appeal with this Court:

 Tisha L. Lindberg filed a motion to dismiss the
 appeal on 7 November 2018, arguing the appeal was
 interlocutory and did not affect a substantial right, and
 therefore should be dismissed. Dunhill filed a response to
 the motion arguing the order did affect a substantial right
 to private information stored on the servers.
 Tisha L. Lindberg subsequently filed a “New Motion
 to Dismiss Based on Withdrawal of Underlying Appellate
 Issue” (“second motion to dismiss”) on 7 December 2018. In

 - 11 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 the second motion to dismiss, Tisha L. Lindberg argued the
 appeal should be dismissed as moot because she entered a
 “Notice of Withdrawal of Forensic Search Request” with
 the trial court. Dunhill and Greg E. Lindberg filed a
 response to Tisha L. Lindberg’s motion to dismiss the
 appeal with this Court arguing the appeal was not moot
 because the withdrawal did not unilaterally dissolve the
 challenged portion of the order, because Tisha L. Lindberg
 remained free to seek further forensic examinations and,
 alternatively, because several exceptions to the mootness
 doctrine applied.

 Dunhill I at *8.

¶ 12 Prior to this Court ruling on those motions, the Supreme Court issued an order

 denying Mr. Lindberg’s and Dunhill’s Petition for Writ of Supersedeas and Motion for

 Temporary Stay on 5 February 2019.

¶ 13 Dunhill’s and Mr. Lindberg’s first appeal from the forensic order was addressed

 in this Court’s 7 April 2020 opinion in Dunhill I. As discussed above, Dunhill I did

 not resolve the forensic examination issue. See Dunhill I at *12 (referring to this

 panel the issues in that appeal). The Dunhill I court noted issues surrounding

 whether the appeal before it was interlocutory or moot:

 Before we can reach the merits of Dunhill and Greg E.
 Lindberg’s arguments in this appeal, however, we note that
 Tisha L. Lindberg has filed two motions to dismiss the
 appeal because (1) the appeal is an interlocutory appeal
 which does not affect a substantial right and (2) the appeal
 is moot because she has filed a “Notice of Withdrawal of
 Forensic Search Request” with the trial court, removing
 the underlying motion to compel discovery. In Tisha L.
 Lindberg’s “Objection and Reply in Opposition to

 - 12 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 Appellants’ ‘Supplemental Response to New Motion to
 Dismiss Appeal,’” she also argues that the trial court’s
 imposition of a final sanctions order on 1 August 2019
 moots the present appeal because the discovery order will
 have no further force or effect.

 Dunhill I at *11. Given those concerns and “[i]n the interests of judicial economy and

 efficiency,” this Court in Dunhill I “refer[red the forensic examination issue] to the

 panel of this Court that will decide Dunhill and Greg E. Lindberg’s appeals of the

 discovery order and the sanctions order together.” Dunhill I at *12.

¶ 14 The sanctions order to which Dunhill I refers was entered after further

 proceedings in the trial court. Following the Supreme Court’s denial of Mr. Lindberg

 and Dunhill’s Petition for Writ of Supersedeas and Motion for Temporary Stay on 5

 February 2019, the trial-level proceedings were no longer stayed. As a result,

 discovery continued with Mr. Lindberg and Dunhill serving Objections and Second

 Amended Responses to Ms. Lindberg’s discovery requests on 11 February 2019.

 Finding those responses “woefully lacking,” Ms. Lindberg filed a Motion to Compel

 Compliance with the June 2018 Order on 22 February 2019. Specifically, Ms.

 Lindberg argued Appellants violated the June 2018 Order by:

 1. Improperly asserting objections that have already been
 expressly overruled by the Court;
 2. Engaging in an improper “document dump” in a way that
 makes it impossible to determine which documents have
 been produced in response to any particular Requests for
 Production (In fact, Mr. Lindberg and Dunhill have
 indicated that every page of every document is being

 - 13 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 produced in response to every Request for Production.);
 3. Continuing to withhold documents and not respond to
 certain discovery requests by Mrs. Lindberg, to which they
 have been expressly Ordered by the Court to respond
 without objection; and
 4. Continuing to refuse to answer interrogatories and
 continuing to refuse to verify interrogatory responses.

 Ms. Lindberg also raised the specter of Rule of Civil Procedure 37 issues, saying

 “[t]hese proceedings have now progressed to the point that an appropriate Rule 37

 inquiry is necessary by the court to address” Appellants’ failures to comply with

 earlier discovery orders. Appellants filed a response to Ms. Lindberg’s Motion to

 Compel on or around 7 March 2019.

¶ 15 The trial court held a hearing on Ms. Lindberg’s Motion to Compel on 11 March

 2019. At that hearing, Appellants’ counsel admitted they had not fully complied with

 the June 2018 Order. Specifically, Appellants’ counsel said, “We have gone a long

 way in complying with that [the June 2018 Order]. I am not arguing that we are

 there, Judge.” (Emphasis added). At another point, Appellants’ counsel agreed with

 the trial court that they had not been following the June 2018 Order.

¶ 16 On 26 March 2019, the trial court entered an order granting Ms. Lindberg’s

 Motion to Compel Compliance with Court Order (“March 2019 Order”). The March

 2019 Order started by summarizing the June 2018 Order, including a verbatim quote

 of Appellants’ obligations under the June 2018 order. The March 2019 Order then

 summarized the history of Dunhill’s and Mr. Lindberg’s appeal from the June 2018

 - 14 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 Order and specifically noted the appeal only concerned the issue of the forensic

 examination ordered therein.

¶ 17 After determining the February 2019 Supreme Court order denying Mr.

 Lindberg’s and Dunhill’s petition for Writ of Supersedeas and Motion for Temporary

 Stay meant “there is no stay over the enforcement” of the June 2018 Order as it

 relates to document requests and interrogatories, the March 2019 Order proceeded

 to analyze Appellants’ discovery actions. First, the March 2019 Order explained the

 June 2018 Order required Appellants to respond to the discovery requests without

 objection and that Appellants had violated the June 2018 Order by improperly

 reasserting all objections. Then, the March 2019 Order faulted Appellants for failing

 to organize the 7,000 pages of documents they had produced at that point. The March

 2019 Order proceeded to recount all of Appellants’ failures to respond to Ms.

 Lindberg’s requests for production and interrogatories in violation of the June 2018

 Order. As part of that process, the trial court listed the specific document productions

 and interrogatories to which Appellants had failed to respond. Relying in part on

 counsel’s admissions at the hearing on the motion to compel included above, the

 March 2019 Order found Appellants were in violation of the June 2018 Order for the

 reasons already discussed.

¶ 18 The trial court then concluded, in the March 2019 Order, that Appellants had

 violated the June 2018 Order and laid out its Rule of Civil Procedure 37(b)(2), N.C.

 - 15 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 Gen. Stat. § 1A-1, Rule 37(b)(2), authority for actions it could take to compel

 compliance. The trial court ordered that by 26 March 2019 Appellants had to “answer

 fully and completely, and without objection” all of Ms. Lindberg’s interrogatories and

 “produce all documents that are being withheld from the document requests

 identified above.” The March 2019 Order further required Appellants to “specifically

 identify which Request for Production” all of their documents corresponded to,

 whether the documents were produced before or after the Order. Finally, the March

 2019 Order awarded attorney’s fees to Ms. Lindberg.

¶ 19 Pursuant to the March 2019 Order, Appellants produced additional documents

 on 26 March 2019. They also organized the documents based upon the discovery

 requests to which they were responsive.

¶ 20 As discovery proceeded, Ms. Lindberg noticed a deposition for Dunhill, via Rule

 of Civil Procedure 30(b)(6), for early May 2019. Dunhill and Mr. Lindberg sought a

 protective order against the Rule 30(b)(6) deposition in mid-April 2019. Pending a

 hearing on the protective order, Ms. Lindberg re-noticed the Rule 30(b)(6) deposition

 to early June 2019. After a hearing on the motion, the trial court entered an order

 denying the protective order because it concluded “in its discretion, that each

 deposition topic at issue is proper . . . .” The court’s order then required Dunhill to

 appear for the noticed deposition “and be prepared to testify, through an appropriate

 company designee, as to all ‘matters known or reasonably available to’ Dunhill

 - 16 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 regarding each topic in the notice of deposition.” (Quoting N.C. Gen. Stat. § 1A-1,

 Rule 30(b)(6)).

¶ 21 On the same day that Appellants sought a protective order for Dunhill’s

 deposition, Mr. Lindberg filed a motion for a temporary stay of proceedings until

 federal criminal charges against him were resolved. On the same day as the trial

 court denied Dunhill’s motion for a protective order, it also issued an order denying

 Mr. Lindberg’s motion for a temporary stay. The trial court found that “none of the

 claims, counterclaims, or causes of action” in the current case were connected to the

 then-pending criminal proceedings against Mr. Lindberg. Concurrently, the trial

 court found neither Mr. Lindberg nor Dunhill would be prejudiced by its order and

 said Mr. Lindberg could assert, in this suit, his Fifth Amendment privilege against

 self-incrimination if he believed it was in his best interest. To further protect Mr.

 Lindberg, the trial court ordered Ms. Lindberg’s counsel “shall not be allowed to

 question Mr. Lindberg at his upcoming deposition in this action regarding the facts

 contained in the Bill of Indictment . . . .” The trial court’s order denying Appellants’

 motion for a protective order also made it clear that because it was denying Mr.

 Lindberg’s motion for a stay, the trial court would not entertain the issues in the stay

 as a basis for granting the protective order.

¶ 22 Based upon those orders, the next discovery proceeding was Dunhill’s Rule

 30(b)(6) deposition. Days before that deposition, Dunhill and Mr. Lindberg produced

 - 17 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 another 129,000 pages of documents. At the deposition, Dunhill’s designated

 corporate representatives were “completely unprepared” to address many of the

 designated topics according to the trial court’s later unchallenged Findings of Fact.

 The document production and deposition led Ms. Lindberg to file a motion, which was

 subsequently corrected, for sanctions under Rule 37(b). After summarizing the

 history of the dispute, Ms. Lindberg argued Dunhill’s and Mr. Lindberg’s actions in

 producing 129,000 pages of documents mere days before the deposition as well as

 Dunhill’s failure to present prepared designees for its deposition justified sanctions.

 As a result of that misconduct, Ms. Lindberg requested as sanctions, specifically: that

 certain facts be established in the action; that Dunhill be barred from supporting its

 claims; that Dunhill’s designees be required to sit again for depositions and fully

 answer on the noticed topics; and “any further relief [the court] deems just and proper

 pursuant to Rule 37(b) for violating this Court’s prior discovery orders.” Dunhill later

 filed a verified response to Ms. Lindberg’s corrected motion for sanctions.

¶ 23 While that motion for sanctions was pending, Ms. Lindberg deposed Mr.

 Lindberg. Mr. Lindberg, according to unchallenged Findings of Fact made later by

 the trial court, committed numerous forms of misconduct at his deposition including:

 repeatedly refusing to answer questions by saying he could not comment; repeatedly

 refusing to review or answer questions about documents, even ones he or Dunhill

 produced; making personal attacks on Ms. Lindberg’s counsel; extreme time wasting;

 - 18 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 and improperly asserting attorney-client privilege when there was clearly no

 communication between lawyer and client. As a result of the deposition, Ms.

 Lindberg filed, under seal, a supplemental motion for sanctions under Rules 37(a),

 37(b), and 41(b). After laying out the facts and law supporting sanctions, Ms.

 Lindberg requested as sanctions that: all pleadings by Mr. Lindberg and by Dunhill

 be stricken; all claims asserted by Dunhill be dismissed with prejudice; Ms. Lindberg

 be allowed to conduct all discovery relevant to her counterclaims; the attorney-client

 objections asserted at Mr. Lindberg’s deposition be overruled; Mr. Lindberg be

 required to sit for another deposition and answer, without objection, all questions

 posed that are relevant to Ms. Lindberg’s counterclaims and damages claims; neither

 Mr. Lindberg nor Dunhill be allowed to use any documents in their 129,000 page

 production on the eve of Dunhill’s deposition; and the trial court grant any further

 relief it deems just and proper under Rule 37(b) for violating the court’s prior

 discovery orders.

¶ 24 The trial court held a hearing on the motions for sanctions on 15 July 2019. At

 the hearing, Appellants delineated where the 129,000 pages they produced on the eve

 of Dunhill’s deposition came from as they tried to argue the documents were

 supplemental rather than a violation of past discovery orders. Specifically 100,000

 pages were bank and credit card statements and the remaining were emails from

 individuals who worked at Dunhill during the relevant time period. The hearing led

 - 19 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 to an order granting Ms. Lindberg’s motions for sanctions on 1 August 2019 (“August

 2019 Order”).

¶ 25 The August 2019 Order started by summarizing the procedural history and

 background of the case as we have already laid out. Characterizing the 129,000 page

 document production on the eve of Dunhill’s deposition as a “document dump,” the

 August 2019 Order laid out how the production violated the March 2019 Order

 because that order had “unequivocally required Dunhill and Mr. Lindberg to produce

 all discovery materials in its possession by no later than the March 26, 2019

 deadline.” (Emphasis in original.) The August 2019 Order also recounted “Dunhill’s

 failure to present prepared witnesses for [its] 30(b)(6) deposition in violation of th[e]

 court’s order.” (Capitalization altered). Specifically, the August 2019 Order detailed

 how Dunhill’s designees were completely unprepared—and in some cases had not

 even inquired to try to prepare—to address certain noticed topics including: electronic

 devices used by Mr. Lindberg at the relevant times; the location of servers that

 housed relevant emails; and the factual bases for Dunhill’s allegations against Ms.

 Lindberg. Dunhill’s designees further quibbled with the meanings of ordinary words

 in English and indicated Ms. Lindberg’s attorneys should find answers by

 “search[ing] through vague categories of documents” while intentionally not

 identifying any specific documents. The trial court also made extensive Findings of

 Fact about the “multiple forms of intentional obstruction and delay repeatedly

 - 20 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 employed by Greg Lindberg at his deposition,” as summarized above. (Capitalization

 altered.)

¶ 26 After those Findings, the August 2019 Order explained how Dunhill and Mr.

 Lindberg had jointly violated the court’s prior orders and worked together to

 “intentionally evade” discovery obligations. After summarizing all those factual

 bases for potential sanctions, the August 2019 Order included a section entitled

 “Consideration of Lesser Sanctions” where the trial court recounted how it had

 considered lesser sanctions, including requiring Appellants to sit for new depositions,

 but did not think they would deter Appellants from continuing to evade discovery

 obligations and violate discovery orders.

¶ 27 The August 2019 Order then included pertinent Conclusions of Law. First, the

 trial court laid out its Conclusions regarding sanctions for Dunhill’s and Mr.

 Lindberg’s 129,000 page “document dump” and Dunhill’s deposition. (Capitalization

 altered.) The trial court then justified its sanctions for Mr. Lindberg’s deposition

 misconduct under Rules of Civil Procedure 37(b) and 41(b). The trial court concluded

 the discussion of sanctions for Mr. Lindberg’s deposition misconduct by again

 justifying harsh sanctions here and, further, overruled all of Mr. Lindberg’s

 assertions of attorney-client privilege from his deposition.

¶ 28 Finally, the August 2019 Order granted both of Ms. Lindberg’s motions for

 sanctions. As sanctions, the trial court first struck all pleadings from Mr. Lindberg

 - 21 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 and Dunhill. The trial court then ruled in favor of Ms. Lindberg on all liability issues

 by dismissing Dunhill’s claims with prejudice and granting default judgment against

 Dunhill and Mr. Lindberg on all of Ms. Lindberg’s claims; it reserved the issue of

 damages for trial. To support those sanctions, the trial court barred Dunhill and Mr.

 Lindberg from opposing any liability issues at trial and designated certain facts be

 established in Ms. Lindberg’s favor. The trial court further allowed Ms. Lindberg to

 proceed with all discovery relevant to the issue of damages. As part of that process,

 the trial court allowed Ms. Lindberg to depose Dunhill on “all previously-noticed

 topics.” (Emphasis in original.) The trial court also permitted Ms. Lindberg to depose

 Mr. Lindberg again and required him “to answer, without objection, all questions

 posed by Mrs. Lindberg’s counsel that are relevant to any of her counterclaims or

 damages claims,” although the trial court confirmed all Mr. Lindberg’s previous

 attorney-client privilege objections had been overruled. Lastly, the August 2019

 Order sanctioned Appellants by barring them from using any documents in the

 129,000 page production and awarding Ms. Lindberg attorney’s fees. Dunhill and

 Mr. Lindberg both filed written notices of appeal, which they then amended.

 II. Grounds for Appellate Review

¶ 29 Appellants provide a “Statement of the Grounds for Appellate Review,” as

 provided for in North Carolina Rule of Appellate Procedure 28(b)(4) and argue the

 - 22 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

sanctions issues are interlocutory but that discovery orders imposing sanctions

impact a substantial right and are thus immediately appealable. (Capitalization

altered.) We agree that the sanctions orders are immediately appealable, although

for slightly different reasons. While Appellants rely on statutes allowing appeals

from interlocutory orders that “[a]ffect[] a substantial right,” N.C. Gen. Stat. § 7A-

27(a) (2021); see also N.C. Gen. Stat. § 1-277 (2021), “an order imposing sanctions

under Rule 37(b) is appealable as a final judgment.”5 Batesville Casket Co., Inc. v.

Wings Aviation, Inc., 214 N.C. App. 447, 457, 716 S.E.2d 13, 20 (2011) (quoting

Smitheman v. Nat’l Presto Indus., 109 N.C. App. 636, 640, 428 S.E.2d 465, 468

(1993)); see also Walker v. Liberty Mut. Ins. Co., 84 N.C. App. 552, 554–55, 353 S.E.2d

425, 426 (1987) (“[W]hen the order is enforced by sanctions pursuant to N.C.R. Civ.P.,

Rule 37(b), the order is appealable as a final judgment.”); Ross v. Ross, 215 N.C. App.

546, 547, 715 S.E.2d 859, 861 (2011) (citing Walker in support of proposition that an

5 Appellants’ position—i.e. that sanctions affect a substantial right and are therefore immediately

appealable despite being interlocutory—also finds support in certain cases from this Court. See, e.g.,
Feeassco, LLC v. Steel Network, Inc., 264 N.C. App. 327, 331, 826 S.E.2d 202, 206–07 (2019) (“[W]hen
a discovery order is enforced by sanctions pursuant to N.C. Gen. Stat. § 1A-1, Rule 37(b), the order
affects a substantial right and is immediately appealable.” (citing In re Pedestrian Walkway Failure,
173 N.C. App. 254, 262, 618 S.E.2d 796, 802 (2005))). We believe an order imposing sanctions is best
described as a final judgment, but ultimately this difference does not impact the case at hand because
either route allows for an immediate appeal of the sanctions order. See Alan D. Woodlief, Jr., Statutory
exceptions to the finality requirement, generally, 1 Shuford N.C. Civil Prac. And Pro. With Appellate
Advocacy § 86:5 (6th ed. 2020) (“Since the statutory provisions discussed above [N.C. Gen. Stat. §§ 7A-
27(d) and 1-277] allow certain interlocutory orders to be appealed immediately, for their purposes the
distinction between final and interim orders is less significant.”).

 - 23 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 order compelling discovery is not a final judgment and does not affect a substantial

 right and therefore is not immediately appealable, unless it imposes sanctions).

¶ 30 Here, the trial court sanctioned both parties under Rule 37(b). Therefore, the

 sanctions order is “appealable as a final judgment.” Batesville Casket Co., 214 N.C.

 App. at 457, 716 S.E.2d at 20.6

¶ 31 To the extent Appellants present arguments concerning the underlying

 discovery orders on which the sanctions are based, see N.C. R. App. P. 28(a) (“Issues

 not presented and discussed in a party’s brief are deemed abandoned.”), “the appeal

 tests the validity of both the discovery order and the sanctions imposed.” In re

 Pedestrian Walkway Failure, 173 N.C. App. at 262, 618 S.E.2d at 802. With one

 exception, Appellants’ arguments only challenge the sanctions imposed, not the

 validity of the underlying discovery orders. As for the exception, Appellants both

 incorporate the argument from their prior appeal that, in the words of Appellants,

 focused on the June 2018 Order’s ruling requiring a “forensic examination of all

 electronic devices that might have relevant information,” regardless of party

 ownership. Therefore, we also review the June 2018 Order’s section on the forensic

 examination of electronic devices as argued in Appellants’ previous appeal.

 6 Our determination that the August 2019 Order was a final judgment aligns with Dunhill I’s
 description of this appeal as one in which “each party appeals not only the final judgment of the trial
 court imposing sanctions, but also again specifically appeals the discovery order at issue in the present
 [first] appeal.” Dunhill I at *11 (emphasis added).

 - 24 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

¶ 32 Notably, even if we could not reach that argument under In re Pedestrian

 Walkway Failure, we would still address Appellants’ arguments in their prior appeal

 due to the law of the case. Specifically, the Dunhill I Court “refer[red the forensic

 examination issue] to the panel of this Court that will decide Dunhill and Greg E.

 Lindberg’s appeals of the discovery order and the sanctions order together.” Dunhill

 I at *12. As that panel, we are bound by the law of the case to consider Dunhill’s and

 Greg Lindberg’s prior appeal as well. See North Carolina Nat. Bank, 307 N.C. at 567,

 299 S.E.2d at 631–32 (explaining how law-of-the-case doctrine requires a subsequent

 Court of Appeals panel to follow the decisions of a previous panel in a given case).

 III. Standard of Review

¶ 33 Because all the issues between the parties are discovery issues and sanctions

 stemming therefrom, the same standard of review applies throughout our analysis.

¶ 34 As this Court has previously explained:

 As a general rule, we review the trial court’s rulings
 regarding discovery for abuse of discretion. [Citation] “An
 abuse of discretion is a decision manifestly unsupported by
 reason or one so arbitrary that it could not have been the
 result of a reasoned decision.” Briley v. Farabow, 348 N.C.
 537, 547, 501 S.E.2d 649, 656 (1998). However, if the trial
 court makes a discretionary ruling based upon a
 misapprehension of the applicable law, this is also an
 abuse of discretion. See State v. Rhodes, 366 N.C. 532, 536,
 743 S.E.2d 37, 39 (2013) (“[A]n abuse-of-discretion
 standard does not mean a mistake of law is beyond
 appellate correction. A [trial] court by definition abuses its
 discretion when it makes an error of law.” (alterations in

 - 25 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 original) (quoting Koon v. United States, 518 U.S. 81, 100,
 116 S. Ct. 2035, 2047), 135 L.Ed.2d 392 (1996))). And if the
 trial court’s ruling depends upon interpretation of a
 statute, we review the ruling de novo. Moore v. Proper, 366
 N.C. 25, 30, 726 S.E.2d 812, 817 (2012) (“[W]hen a trial
 court’s determination relies on statutory interpretation,
 our review is de novo because those matters of statutory
 interpretation necessarily present questions of law.”).

 Myers v. Myers, 269 N.C. App. 237, 240–41, 837 S.E.2d 443, 447–48 (2020) (citation

 omitted as indicated; all other alterations in original).

¶ 35 The same abuse-of-discretion standard applies in the context of sanctions. See

 Feeassco, 264 N.C. App. at 337, 826 S.E.2d at 210 (“According to well-established

 North Carolina law, a broad discretion must be given to the trial judge with regard

 to sanctions.”) (quoting Batlle v. Sabates, 198 N.C. App. 407, 417, 681 S.E.2d 788, 795

 (2009)). Applying that standard in the sanctions context specifically, “[a] trial court

 does not abuse its discretion by imposing a severe sanction so long as that sanction is

 among those expressly authorized by statute and there is no specific evidence of

 injustice.” Id. (quotation marks and citation omitted). While trial courts “must

 consider the appropriateness of less severe sanctions” before “imposing a severe

 sanction,” id., the ultimate choice of sanctions is still within their discretion. See In

 re Pedestrian Walkway Failure, 173 N.C. App. at 247, 618 S.E.2d at 826 (“[T]he choice

 of sanctions under Rule 37 is within the trial court’s discretion . . . .” (citation and

 quotations omitted)).

 - 26 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

¶ 36 In reviewing the trial court’s order under the abuse of discretion standard, any

 unchallenged findings of fact are binding on appeal. Feeassco, 264 N.C. App. at 340,

 826 S.E.2d at 211 (citing Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731

 (1991) (“Where no exception is taken to a finding of fact by the trial court, the finding

 is presumed to be supported by competent evidence and is binding on appeal.”)). Any

 challenged findings of fact “are conclusive on appeal if supported by competent

 evidence, even if the evidence is conflicting.” Baker v. Rosner, 197 N.C. App. 604, 608,

 677 S.E.2d 887, 890 (2009) (quoting State v. Haislip, 362 N.C. 499, 500, 666 S.E.2d

 757, 758 (2008)). We review each of Appellants’ arguments under an abuse of

 discretion standard.

 IV. Sanctions for Document Productions

¶ 37 Both Appellants argue the court erred in sanctioning them for their document

 productions. After setting out law requiring a “predicate violation” of a prior court

 order to compel discovery, Appellants contend “the fundamental problem with these

 orders [the sanctions order on appeal] is that there was no predicate violation of a

 court order.” Specifically, Appellants argue “the March 2019 Order failed to identify

 any violation of the June 2018 Order,” and that the August 2019 Order failed to show

 a violation of the March 2019 Order. Within each of those arguments, Appellants

 take issue with certain Findings of Fact in the March and August 2019 Orders and

 detail why no predicate orders existed. After reviewing the relevant law, we address

 - 27 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 the alleged issues with the March 2019 and August 2019 Orders in turn.

¶ 38 North Carolina Rule of Civil Procedure 37(b)(2) authorizes “sanctions by [a]

 court in which action is pending” when a party or certain representatives of a party,

 inter alia, “fail[] to obey an order to provide or permit discovery.” N.C. Gen. Stat. §

 1A-1, Rule 37(b)(2) (2021) (capitalization altered). The statute authorizes sanctions

 “as are just” and explicitly allows, as relevant here:

 a. An order that the matters regarding which the order was
 made or any other designated facts shall be taken to be
 established for the purposes of the action in accordance
 with the claim of the party obtaining the order;
 b. An order refusing to allow the disobedient party to
 support or oppose designated claims or defenses, or
 prohibiting the party from introducing designated matters
 in evidence;
 c. An order striking out pleadings or parts thereof, or
 staying further proceedings until the order is obeyed, or
 dismissing the action or proceeding or any part thereof, or
 rendering a judgment by default against the disobedient
 party;

 N.C. Gen. Stat. § 1A-1, Rule 37(b)(2)(a)–(c).

¶ 39 “Generally sanctions under Rule 37 are imposed only for the failure to comply

 with a court order.” Myers, 269 N.C. App. at 252, 837 S.E.2d at 454 (quoting Pugh v.

 Pugh, 113 N.C. App. 375, 379, 438 S.E.2d 214, 217 (1994)). Thus, “a party seeking

 sanctions must first demonstrate a violation of a substantive rule of discovery, based

 upon Rules 26 through 36, obtain a court order to compel discovery, and then Rule 37

 sanctions may be imposed.” Id. (emphasis in original; footnote omitted). This

 - 28 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 requirement for a violation of a court order compelling discovery is what Appellants

 term as a requirement for a “predicate violation.” Because a sanctions order requires

 an underlying violation of a court order compelling discovery, the trial court abuses

 its discretion “if there is no record evidence which indicates that [a party] acted

 improperly, or if the law will not support the conclusion that a discovery violation has

 occurred.” Baker, 197 N.C. App. at 607, 677 S.E.2d at 890 (quotation and citation

 omitted).

¶ 40 Here, the parties’ dispute does not center on the law requiring an underlying

 order compelling discovery and a violation of that order. We review the specifics of

 each of those arguments.

 A. March 2019 Order Finding Violations of June 2018 Order

¶ 41 Appellants’ argue “[t]here was no violation of the June 2018 Order” and thus

 the March 2019 Order erred in awarding sanctions under Rule 37(b). Their parallel

 arguments begin by asserting the March 2019 Order never addressed the key

 question of “which documents and where designated.” (Citing Willis v. Duke Power

 Co., 291 N.C. 19, 31, 229 S.E.2d 191, 198 (1976)). Then, Appellants contend, “[r]ather

 than answering that question, in the March 2019 Order the trial court created new

 requirements and obligations not found in the June 2018 Order.” Each Appellant

 then alleges “there is no evidence to support” certain, listed Findings of Fact from the

 March 2019 Order. We address Appellants’ argument that the trial court did not

 - 29 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 answer the question of which documents and where designated before turning to their

 arguments about the challenged Findings of Fact.

¶ 42 Appellants’ argument that the trial court did not answer the question of which

 documents and where designated is misplaced because that question had already

 been answered. Appellants rely on Willis v. Duke Power Co. Appellants’ quote from

 Willis v. Duke Power Co. is taken out of context, as the language immediately after

 the quote on which Appellants rely shows that case is distinguishable. The predicate

 order in that case required “the defendant to answer the plaintiff's interrogatories

 and to produce ‘the documents therein designated . . . .’ The question is which

 documents and where designated. At the time of this order no documents had been

 identified or designated by either party.” Willis, 291 N.C. at 31, 229 S.E.2d at 198–

 99.

¶ 43 Here, the June 2018 Order required Dunhill and Mr. Lindberg to “fully and

 completely reply to each and every Interrogatory and discovery request for production

 of documents” with exceptions not relevant here. (Emphasis added.) The June 2018

 Order also specifically “fully incorporated herein by reference” the “requests for

 discovery” that Ms. Lindberg had filed on 26 February 2018. Thus, unlike in Willis,

 291 N.C. at 31, 229 S.E.2d at 198–99, Ms. Lindberg had designated documents in her

 discovery requests from February 2018 and the trial court indicated those documents

 were the ones Appellants needed to provide to comply with the June 2018 Order. The

 - 30 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 trial court highlighted that part of the June 2018 Order again for Appellants in its

 March 2019 Order by specifically reproducing the documents designated. Therefore,

 the March 2019 Order highlighted the part of the June 2018 Order that answered the

 very question Appellants now claim the March 2019 Order failed to answer.

¶ 44 Turning to the challenged Findings of Fact from the March 2019 Order,

 Appellants’ arguments fit into three categories: (1) the June 2018 Order did not

 require them to respond to Tisha Lindberg’s requests without objection (challenges

 to Findings of Fact 18, 19, 22, 28, 31, 32, 34, 37, 38, 42, 43); (2) the June 2018 Order

 did not require production of documents in a manner that indicated to which

 discovery request they responded (challenges to Findings of Fact 24, 25); (3) other

 topics that are not properly argued before us (challenges to Findings of Fact 7, 17, 28,

 29, 33, 35, 39, 48).

¶ 45 Taking the categories in order, Appellants first argue the June 2018 Order did

 not require them to respond to Ms. Lindberg’s requests without objection and thus it

 was an error for the March 2019 Order to find the June 2018 Order did just that.

 While the June 2018 Order did not specifically state Appellants had to respond to Ms.

 Lindberg’s requests “without objection,” the June 2018 Order in its entirety supports

 this reading. First, the June 2018 Order addressed the specific objections Appellants

 had raised and then overruled nearly all of them concluding they lacked merit—other

 than attorney-client privilege, which we address below—and determining they “were

 - 31 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 interposed for an improper purpose of delay and avoiding any meaningful response.”

 In the June 2018 Order, the trial court had already ruled upon the particular

 objections Appellants attempted to raise again. This argument, like Appellants

 repeated attempts to raise the same objections again after the trial court had already

 rejected them, is without merit.

¶ 46 Further, the June 2018 Order provided a specific procedure for Appellants to

 renew objections based on a claim of attorney-client privilege. A common canon of

 statutory construction says “when a statute lists the situations to which it applies, it

 implies the exclusion of situations not contained in the list.” E.g. Cooper v. Berger,

 371 N.C. 799, 810, 822 S.E.2d 286, 296 (2018) (quotations and citations omitted).

 Applying similar logic here, by listing that Appellants could renew objections based

 on a claim of attorney-client privilege, the June 2018 Order implied Appellants could

 not renew their other objections. Under the June 2018 Order, Appellants were

 supposed to respond to the outstanding discovery requests without raising the same

 objections the trial court had already rejected, so the trial court did not abuse its

 discretion in the March 2019 Order by finding Appellants violated the June 2018

 Order for reasserting overruled objections.

¶ 47 Appellants also argue they could have reasserted their previously overruled

 objections because “failure to reassert the objections could be construed as waiver.”

 Both cases upon which Appellants rely involve rules and situations where waiver

 - 32 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 might follow when a party failed to properly object even once. See Adams v. Lovette,

 105 N.C. App. 23, 28–29, 411 S.E.2d 620, 623–24 (1992) (laying out rule for implied

 waiver on an issue where defendant had never stated an objection on the ground

 argued on appeal); Golding v. Taylor, 19 N.C. App. 245, 246, 248, 198 S.E.2d 478,

 479–80 (1973) (stating that there is ordinarily a rule that a failure to object to

 interrogatories within a fixed time constitutes waiver before explaining the party had

 objected at the first time of asking but just not within the appropriate timeframe).

 Thus, those cases provide no support for a party needing to reassert meritless

 objections a second time. Further, Rule of Appellate Procedure 10(a) only requires a

 party to assert its objection and obtain a ruling from the trial court in order to

 preserve the issue. Therefore, we reject Appellants’ argument that they would have

 waived their objections to Ms. Lindberg’s discovery requests if they failed to reassert

 them after the June 2018 Order denied nearly all of them.

¶ 48 Turning to the next category, Appellants assert the March 2019 Order erred

 when it “stated that it was ‘improper and in violation of’ the June 2018 Order to

 produce documents without indicating to which particular discovery requests the

 documents responded.” While the June 2018 Order does not specifically say

 Appellants must indicate to which particular discovery requests the documents

 respond, reading the Order in its entirety once again supports that requirement. The

 June 2018 Order mandated Appellants “fully and completely reply to each and every

 - 33 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 Interrogatory and discovery request for production of documents” with one exception

 not relevant here. (Emphasis added.) The March 2019 Order explicitly quoted that

 language when summarizing the June 2018 Order. Given that language, we cannot

 say the March 2019 Order’s determination that the June 2018 Order required

 Appellants to indicate which particular discovery request documents responded to

 was “manifestly unsupported by reason” or “so arbitrary that it could not have been

 the result of a reasoned decision.” Myers, 269 N.C. App. at 240, 837 S.E.2d at 447–

 48. Therefore, the trial court did not abuse its discretion by finding it was a violation

 of the June 2018 Order to produce documents without indicating to which request

 they responded.

¶ 49 Appellants also argue Rule of Civil Procedure 34(b)(1) allows parties to produce

 documents as they are kept in the usual course of business rather than labeling them

 in response to a particular document request. Appellants omit the prefatory clause

 of the rule. The full sentence reads:

 Unless otherwise stipulated by the parties or ordered by the
 court, the following procedures apply to producing
 documents or electronically stored information:

 (1) A party must produce documents as they are kept
 in the usual course of business or must organize and
 label them to correspond to the categories in the
 request;

 N.C. Gen. Stat. § 1A-1, Rule 34(b)(2021) (emphasis added). Appellants may have

 - 34 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 originally had the choice to produce documents in the ordinary course of business,

 but the June 2018 Order removed that choice by requiring them to label the

 documents by request.

¶ 50 Turning to the final category, Appellants list many other Findings of Fact they

 claim “there is no evidence to support” without making any further argument. North

 Carolina Rule of Appellate Procedure 28(a) requires parties to present and discuss

 issues or they are deemed abandoned. N.C. R. App. P. 28(a); see also N.C. R. App. P.

 28(b)(6) (requiring a party to support issues by reason or argument). Failure to follow

 Rule 28 makes it “difficult if not impossible to properly determine the appeal.”

 Steingress v. Steingress, 350 N.C. 64, 66, 511 S.E.2d 298, 299 (1999). Furthermore,

 “[i]t is not the duty of this Court to peruse through the record, constructing an

 argument for appellant.” Person Earth Movers, Inc. v. Thomas, 182 N.C. App. 329,

 333, 641 S.E.2d 751, 754 (2007).

¶ 51 Here, Appellants abandon any argument of the remaining Findings of Fact

 they challenge, and it is not our duty to “peruse through the record” to construct their

 argument for them. Id. For example, both Appellants challenge Finding of Fact 48

 awarding attorney’s fees and making eight specific sub-Findings of Fact, some of

 which span multiple sentences. Despite that listed challenge, neither Appellant

 further mentions in their argument the two pages of the record Finding 48 covers,

 apparently leaving for this Court to determine the specific portions of the Finding

 - 35 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 Appellants challenge.

¶ 52 As another example, Appellants challenge Findings of Fact 27 and 33, each of

 which lists approximately twenty five requests for document production Appellants

 still had not responded to in violation of the June 2018 Order. Appellants provide no

 evidence or record citations to support their compliance with those requests. It is not

 our duty to search the 7,000 pages of documents Appellants produced between the

 June 2018 and March 2019 Orders—which also do not appear to be in the record—to

 determine Appellants’ compliance with those requests. Person Earth Movers, 182

 N.C. App. at 333, 641 S.E.2d at 754. Because Appellants have failed to present an

 argument as to these remaining challenged Findings of Fact, we deem those

 challenges abandoned. N.C. R. App. P. 28(a), (b)(6).

¶ 53 Finally, Appellants argue the March 2019 Order “failed to even acknowledge

 that [Appellants] had appealed from the June 2018 Order” and “effectively sought to

 punish [Appellants] for obtaining stay relief from the appellate courts” because

 Appellants “promptly served the responses and produced the documents required by

 the June 2018 Order” once the stay was denied. We cannot reconcile this argument

 with the record before us. The March 2019 Order acknowledged the initial appeal

 from the June 2018 Order and the history of that appeal in multiple unchallenged

 Findings of Fact. The March 2019 Order then specifically found in unchallenged

 Finding of Fact 15: “As a result of the Supreme Court’s February 5, 2019 Order, this

 - 36 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 matter is not stayed in any way and proceedings at the trial court level must move

 forward.” Thus, contrary to Appellants’ argument, the March 2019 Order

 acknowledged their appeals and the stays involved.

¶ 54 The record also does not support Appellants’ argument that they complied with

 the June 2018 Order once the stay was denied. At the 11 March 2019 hearing that

 led to the March 2019 Order, Appellants’ counsel admitted they had not fully

 complied with the June 2018 Order. At one point, Appellants’ counsel said, “We have

 gone a long way in complying with that [June 2018 Order]. I am not arguing that we

 are there, Judge.” (Emphasis added.) At another point, the following exchange

 occurred:

 THE COURT: . . . what is before me is you now have an
 order, after all of this, that Judge Smith entered on June
 27th of 2018 that’s not being followed.
 MR. PACE [Appellants’ counsel]: You’re exact – you’re
 correct. We agree 100 percent it is time to comply with the
 order.

 (Emphasis added.) Thus, a month and six days after the final stay was denied,

 Appellants still admitted they were not in compliance. Notably, this was roughly the

 same amount of time the June 2018 Order originally gave them to comply.

¶ 55 Reviewing for abuse of discretion, we reject all of Appellants’ arguments that

 the March 2019 Order improperly found violations of the June 2018 Order. The

 parties must comply with the order actually entered, regardless of what a party

 - 37 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 wishes the order had required. See Becker v. Pierce, 168 N.C. App. 671, 678–79, 608

 S.E.2d 825, 830 (2005) (finding no error when defendant produced three letters as

 required by the previous court order but did not produce a fourth that plaintiffs

 claimed was covered). What Appellants wish the June 2018 Order required is not

 relevant. What matters is the June 2018 Order actually identified the documents to

 be produced, ordered Appellants to respond without objection, and required

 Appellants to indicate to which discovery request each document responded. The

 March 2019 Order further properly took into account Appellants’ appeal from the

 June 2018 Order. Therefore, the trial court did not abuse its discretion by finding, in

 the March 2019 Order, that Appellants violated the June 2018 Order.

 B. August 2019 Order Finding Violations of the March 2019 Order

¶ 56 Similar to their first argument, Appellants contend “[t]here was no violation of

 the March 2019 Order” and thus the August 2019 Order erred in awarding sanctions

 under Rule 37(b). As with the previous argument, Appellants challenge listed

 Findings of Fact and then have arguments, some of which are unconnected to the

 challenged Findings. We first address the challenges to the Findings before turning

 to the unconnected arguments.

¶ 57 Appellants both challenge the same Findings of Fact in the August 2019 Order.

 As with their previous argument, Appellants list certain Findings of Fact that they

 claim “there is no evidence to support” without making any further argument

 - 38 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 (Findings 10, 22, 101, 110). Because Appellants have failed to present an argument

 as to these challenged Findings of Fact, we again deem those challenges abandoned.

 N.C. R. App. P. 28(a), (b)(6).

¶ 58 The next Finding of Fact Appellants challenge (Finding 21) summarizes the

 ways in which Appellants, after the final stay was lifted in February 2019, “continued

 purposefully to withhold discovery and violate the Court’s June 27, 2018 Discovery

 Order . . . .” Of the listed violations in that Finding, Appellants only specifically argue

 “there was no prohibition against reasserting objections,” so we only address that

 argument. See N.C. R. App. P. 28(a), (b)(6) (deeming challenges to be abandoned if

 not specifically argued). We have already determined above that the June 2018 Order

 prohibited Appellants from reasserting their objections, and we reject this challenge

 for the same reason.

¶ 59 The final challenged Finding of Fact (Finding 32) determined Appellants

 violated the March 2019 Order through their 129,000 page document production in

 May 2019 because that was after the March 2019 Order’s deadline “to produce all

 discovery materials” in Appellants’ possession. (Emphasis in original.) Appellants

 argue the March 2019 Order did not require producing all discovery materials but

 rather all documents that were being withheld, which Appellants argue they did.

 Appellants then argue this later production permissibly supplemented their earlier

 production with “documents [that] were received from third parties and computer

 - 39 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 servers . . . .” This supplementation argument therefore also contends none of the

 documents in the 129,000 page production from May 2019 were documents that had

 previously been withheld.

¶ 60 The record here cannot support Appellants’ argument. The March 2019 Order

 listed numerous requests for document production with which Appellants entirely

 failed to comply. The March 2019 Order then required Appellants to “produce all

 documents that are being withheld from the document requests identified above.”

 Thus, the term withholding referred to all documents Appellants had related to those

 discovery requests.

¶ 61 Despite the fact that Appellants had to provide all documents related to those

 requests by the 26 March 2019 deadline set in the March 2019 Order, they failed to

 comply. Instead, Appellants had still not complied by May 2019 because the May

 2019 production included many documents responsive to those requests. While we

 do not have the entire batch of discovery documents before us, Appellants’ own

 admission that these documents were responsive to prior requests puts them in

 violation of the March 2019 Order, unless all of the documents produced were

 supplemental.

¶ 62 The record here belies Appellants’ contention that all 129,000 pages produced

 in May 2019 were supplemental. At the July 2019 hearing on Ms. Lindberg’s motion

 for sanctions, Appellants’ counsel identified the sources of the 129,000 pages. About

 - 40 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 a quarter of the documents (29,000 pages) were emails from the accounts of

 individuals who worked at Dunhill during the relevant time period. Rule of Civil

 Procedure 34(a) allows a party to obtain production of documents “which are in the

 possession, custody or control of the party upon whom the request is served.” N.C.

 Gen. Stat. §1A-1, Rule 34(a). Dunhill clearly had possession, custody, or control over

 the email accounts of its own employees. Thus, the 29,000 pages of emails cannot all

 be supplemental.

¶ 63 The remaining 100,000 pages were bank and credit card statements, of which

 we presume at least some were for accounts held by either Dunhill or Mr. Lindberg

 given the underlying requests focused on those accounts. Appellants do not show

 these documents were all supplemental. As the terms are used in Rule of Civil

 Procedure 34(a), “possession, custody, or control of the party” includes documents a

 party has “the legal right to obtain . . . on demand.” See Pugh, 113 N.C. App. at 380,

 438 S.E.2d at 218 (describing that test as the federal standard then applying it in the

 case at hand) (quotations and citation omitted).

¶ 64 Dunhill and Mr. Lindberg certainly had the legal right to obtain on demand

 their own bank and credit card statements. Therefore, they had possession, custody,

 or control of at least some of those 100,000 pages of records before the March 2019

 Order’s deadline. To characterize all 129,000 pages in the May 2019 production as

 supplemental per Appellants’ arguments the August 2019 Order faulted them for

 - 41 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 supplementing their production is incredulous. The trial court did not abuse its

 discretion in finding, in the August 2019 Order, that the 129,000 page production in

 May 2019 violated the March 2019 Order.

¶ 65 Finally, Appellants argue they “[a]t the very least . . . made good faith efforts

 to comply with the trial court’s orders,” and therefore they should not have been

 sanctioned. Appellants are correct that Rule 37 requires “a good faith effort at

 compliance with the court order.” Laing v. Liberty Loan Co. of Smithfield and

 Albemarle, 46 N.C. App. 67, 71, 264 S.E.2d 381, 384 (1980). While a party’s willful

 violation of a court order will defeat a finding of good faith, see Willis, 291 N.C. at 32–

 33, 229 S.E.2d at 199 (finding defendant acted in good faith and that there was no

 evidence of a willful refusal), North Carolina law does not require a party to have

 willfully violated a court order to justify an award of Rule 37 sanctions. Henderson

 v. Wachovia Bank of North Carolina, N.A., 145 N.C. App. 621, 629, 551 S.E.2d 464,

 470 (2001) (“[T]he plain language of Rule 37 does not require a showing of

 willfullness. The order of default judgment may be entered against a defendant

 pursuant to Rule 37(b)(2) for failure to obey a court order whether the failure was

 willful or not.”); see also N.C. Gen. Stat. § 1A-1, Rule 37, Comment to the 1975

 Amendment (recounting how shift of language to “failure” from “refusal” aimed to

 make clear that courts do not have to find a willful failure to impose sanctions).

 Rather, the good faith standard eliminates the threat of sanctions “[i]f a party’s

 - 42 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 failure to produce is shown to be due to inability fostered neither by its own conduct

 nor by circumstances within its control . . . .” Laing, 46 N.C. App. at 71, 264 S.E.2d

 at 384.

¶ 66 Here, Appellants’ failures to comply with the March 2019 Order were due to

 their own conduct and circumstances within their control. Considering the entire

 history of this discovery dispute, the multiple orders addressing Appellants’

 objections and late and deficient responses, as well as Dunhill’s and Mr. Lindberg’s

 deposition testimony, Appellants have not shown good faith in Appellants’ responses

 to the discovery requests. As explained above, Appellants had in their possession,

 control, or custody or had the legal right to demand all the documents they admitted

 were part of the May 2019 production. Therefore, Appellants did not act with good

 faith and were subject to Rule 37 sanctions.

¶ 67 We find the trial court did not abuse its discretion in ruling, in its August 2019

 Order, Appellants violated the March 2019 Order. Combined with our previous

 conclusion about violations of the June 2018 Order, we hold the trial court did not

 abuse its discretion in sanctioning Appellants for their document production actions

 and inactions.

 V. Sanctions for Depositions

¶ 68 In addition to arguing they should not have been sanctioned for their actions

 and inactions around document production, both Appellants assert the trial court

 - 43 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 erred in sanctioning them for their depositions. Similar to the document production

 issue, Appellants both argue “without a predicate order in place, the sanctions” based

 on their depositions “were inappropriate.” Dunhill then presents an additional

 argument that the trial court “misconstrued Rule 30(b)(6),” the basis for its

 deposition. We first address the predicate order issue for each Appellant before

 turning to Dunhill’s argument about Rule 30(b)(6).

 A. Predicate Order Issue

¶ 69 Both Appellants argue the trial court erred by sanctioning them for their

 depositions “without a predicate order in place.” This argument closely resembles the

 contentions Appellants had regarding document productions.

¶ 70 Given the similarities in the argument, much of the law governing Appellants’

 contention is the same here, so we briefly recite it. Rule of Civil Procedure 37(b)(2)

 permits sanctions when “a party fails to obey an order to provide or permit discovery

 . . . .” N.C. Gen. Stat. § 1-1A, Rule 37(b)(2). Thus, “[i]n general, ‘sanctions under Rule

 37 are imposed only for the failure to comply with a court order,’” i.e. failure to comply

 with a predicate order borrowing Appellants’ term. Lovendahl v. Wicker, 208 N.C.

 App. 193, 200, 702 S.E.2d 529, 534 (2010) (quoting Pugh, 113 N.C. App. at 379, 438

 S.E.2d at 217). Additionally, “[a] motion for a protective order under Rule 26(c) that

 is denied . . . may end in the same result as a motion to compel discovery under Rule

 37(a): an order compelling discovery.” Id. This similar result arises directly from the

 - 44 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 language of Rule 26(c) providing “[i]f the motion for a protective order is denied in

 whole or in part, the court may, on such terms and conditions as are just, order that

 any party or person provide or permit discovery.” Id. (quoting N.C. Gen. Stat. § 1A-

 1, Rule 26(c)) (alteration in original). As a result, “violation of an order compelling

 discovery that results from a motion for a protective order may [also] be the basis for

 sanctions under Rule 37(b).” Id. We review the trial court’s actions challenged in the

 predicate order arguments for abuse of discretion. See Myers, 269 N.C. App. at 240,

 837 S.E.2d at 447 (“As a general rule, we review the trial court’s rulings regarding

 discovery for abuse of discretion.”); Feeassco, 264 N.C. App. at 336, 826 S.E.2d at 209

 (reviewing order granting motion for sanctions for abuse of discretion).

 1. Dunhill’s Predicate Order Argument

¶ 71 Dunhill argues “without a predicate order in place, the sanctions based on the

 30(b)(6) deposition of Dunhill were inappropriate.” It also asserts the August 2019

 Order “did not even purport to identify a predicate order regarding Dunhill’s

 deposition.” While Dunhill acknowledges the order denying its motion for a protective

 order, it argues that order was not specific enough for Dunhill to be required “to do

 anything other than provide prepared witnesses.” Finally, Dunhill argues the August

 2019 Order erred by sanctioning Dunhill for previous misconduct by both it and by

 Mr. Lindberg.

¶ 72 Taking Dunhill’s arguments in turn, it is simply wrong to argue the August

 - 45 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

2019 Order failed to identify a predicate order. We have identified four examples of

times the August 2019 Order referred to the trial court’s previous order denying

Dunhill’s and Mr. Lindberg’s Motion for a Protective Order and said Dunhill violated

that previous order by failing to present prepared witnesses at its Rule 30(b)(6)

deposition:

 30. On June 5, 2019, the Court entered a written
 order denying Dunhill’s Motion for Protective Order, and
 expressly ordered that Dunhill make available for its Rule
 30(b)(6) deposition an appropriate company designee for all
 noticed topics who was prepared to testify “as to ‘all
 matters known and reasonably available to’ Dunhill
 regarding each topic in the notice of deposition.” See this
 Court’s 6/5/2019 Order on Dunhill Holdings, LLC and Greg
 Lindberg’s Motion for Protective Order (citing N.C. Gen.
 Stat. § 1A-1, Rule 30(b)(6)).
 ...
 42. Dunhill’s failure to prepare for its deposition,
 as it was required to do under Rule 30(b)(6) and this
 Court’s 5 June 2019 Order . . . .
 ...
 47. Brenda Lynch was designated as Dunhill’s
 corporate representative to testify pursuant to Rule
 30(b)(6) as to Dunhill’s specific knowledge of Topics 1 and
 2. Moreover, and as previously discussed above, pursuant
 to this Court’s June 5, 2019 Order on Dunhill Holdings,
 LLC and Greg Lindberg’s Motion for Protective Order,
 Dunhill was ordered by the Court to produce at the
 deposition an appropriate company designee who is
 prepared to testify “as to ‘all matters known and
 reasonably available to’ Dunhill regarding each topic in the
 notice of deposition.” (citing N.C. Gen. Stat. § 1A-1, Rule
 30(b)(6)).
 ...
 51. The Court finds that Ms. Lynch’s deposition

 - 46 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 testimony, given on behalf of Dunhill, represents a failure
 of Dunhill to adequately testify in response to Topics 1-43,
 in direct violation of this Court’s 5 June 2019 Order on
 Dunhill and Mr. Lindberg’s Motion for Protective Order
 described above.

 (Emphasis in original.) Dunhill does not challenge any of those Findings of Fact, so

 they are binding on appeal. See Feeassco, 264 N.C. App. at 340, 826 S.E.2d at 211

 (determining unchallenged findings of fact in a sanctions order were binding on

 appeal). Based on these binding Findings of Fact, the trial court identified its order

 denying Appellants’ motion for a protective order as the predicate order compelling

 discovery, which is allowed under Lovendahl. 208 N.C. App. at 200, 702 S.E.2d at

 534.

¶ 73 Dunhill’s failure to recognize the predicate order, upon which the trial court

 relied, might stem from its related argument that the order denying its motion for a

 protective order was not specific enough. Dunhill cites no binding precedent to

 support that argument.7 However, in Lovendahl, this Court ruled an order denying

 a motion for a protective order was sufficient to justify Rule 37(b) sanctions when the

 order merely required the defendant to “‘submit to deposition within forty-five days

 7 In fact, Dunhill primarily cites unpublished federal district court opinions.Citation to this Court’s
 own unpublished opinions is “disfavored,” N.C. R. App. P. 30(e)(3), so citation to other courts’
 unpublished opinions at least warrants the same treatment. The citations here are particularly
 inapposite because, as explained above, this Court has issued binding precedent on the issue. See N.C.
 R. App. P. 30(e)(3) (“If a party believes, nevertheless, that an unpublished opinion has precedential
 value to a material issue in the case and that there is no published opinion that would serve as well,
 the party may cite the unpublished opinion . . . .”) (emphasis added).

 - 47 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 of the date of this Order.’” 208 N.C. App. at 200–02, 702 S.E.2d at 534–35. Here, the

 trial court’s order denying the motion for a protective order said:

 Accordingly, and pursuant to Rule 30(b)(6) of the North
 Carolina Rules of Civil Procedure, Dunhill Holdings, LLC
 shall appear as noticed on June 5 and 6, 2019 for its
 deposition and be prepared to testify, through an
 appropriate company designee, as to all “matters known or
 reasonably available to” Dunhill regarding each topic in
 the notice of deposition. N.C. Gen. Stat. § lA-1, Rule
 30(b)(6).

 The trial court’s order, specifically directing Dunhill’s designee to be prepared to

 testify to all matters known or reasonably available on each noticed topic, is more

 specific than the language this Court found acceptable in Lovendahl. Therefore, we

 find the language here was specific enough that a violation of the order denying the

 motion for the protective order could support sanctions under Rule 37(b).

¶ 74 Turning to its final argument, Dunhill asserts “[t]he trial court erred by

 assuming it could enter sanctions based on the history of the parties’ discovery

 disputes,” especially since Mr. Lindberg is a separate individual according to Dunhill.

 Dunhill’s arguments are unpersuasive. Dunhill quotes a portion of Conclusion of Law

 141 that references a long pattern of violations of discovery orders, but that

 Conclusion appears under the heading “Sanctions Arising from Misconduct During

 Mr. Lindberg’s Deposition.” Dunhill seemingly ignores Conclusions of Law 114–28,

 which recount the basis for sanctions against Dunhill based on its Rule 30(b)(6)

 - 48 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 “Deposition Misconduct.” Those Conclusions and the facts we recounted above detail

 how Dunhill was sanctioned not for its past misconduct but rather for its new failure

 to comply with the order compelling discovery that came out of the order denying

 Dunhill’s motion for a protective order. Thus, Dunhill was sanctioned not for its

 previous misconduct—which was extensive as recounted in our analysis of the

 document production sanctions above—but rather for its new misconduct in

 depositions.

¶ 75 Dunhill also contends the trial court improperly conflated it with Mr. Lindberg,

 arguing “accusations of misconduct against a separate individual (like Mr. Lindberg)

 should not be part of the analysis.” As recounted more fully above, Dunhill was

 sanctioned for its own failures. For example, unchallenged Finding of Fact 51 faulted

 Dunhill for failing “to adequately testify in response to Topics 1-43, in direct violation

 of this Court’s 5 June 2019 Order on Dunhill and Mr. Lindberg’s Motion for Protective

 Order described above.” The underlying premise that Dunhill and Mr. Lindberg are

 separate is questionable. In unchallenged Findings of Fact, the trial court noted

 evidence that Dunhill and Mr. Lindberg are not separate in general and specifically

 “collu[ded]” in their deposition misconduct:

 100. . . . . In fact, on numerous occasions, the corporate
 representatives at Dunhill’s Rule 30(b)(6) deposition
 testified that they were not knowledgeable persons to
 testify regarding the noticed topics, and instead Mr.
 Lindberg, the sole owner and manager of Dunhill, was in

 - 49 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 fact the more knowledgeable individual about the noticed
 topics. [footnote] Counsel for Mrs. Lindberg thereafter
 reasonably proceeded to ask Mr. Lindberg about many of
 these same topics at his deposition, only to be met with his
 repeated refusals to answer relevant questions.
 101. The Court finds that Greg Lindberg’s refusal to
 answer relevant deposition questions, when combined with
 his sole ownership and control over Dunhill as a corporate
 entity, amounts to collusion between Dunhill and Greg
 Lindberg at their respective depositions to intentionally
 evade their discovery obligations in this matter and to
 purposefully withhold relevant information from Mrs.
 Lindberg and her counsel. The Court finds the same is true
 with respect to Dunhill and Mr. Lindberg’s repeated
 violations of this Court’s prior orders compelling them to
 produce documents and materials in discovery.

 (Footnote omitted.) Given Dunhill’s own misconduct warranted sanctions and its

 connection to and collusion with Mr. Lindberg, we also reject this argument.

¶ 76 Thus, reviewing for abuse of discretion, we reject all of Dunhill’s arguments

 about the lack of a predicate order and its related objections.

 2. Mr. Lindberg’s Predicate Order Argument

¶ 77 Mr. Lindberg’s predicate violations argument resembles Dunhill’s argument,

 but Mr. Lindberg also contends he was inappropriately sanctioned for invoking his

 Fifth Amendment privilege against self-incrimination. Mr. Lindberg first mirrors

 Dunhill’s arguments that no predicate order existed to justify sanctions and that the

 trial court erred by sanctioning Mr. Lindberg for past misconduct by both him and

 Dunhill. Then, Mr. Lindberg argues his “reluctance or refusal to answer some

 - 50 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 questions is not surprising” given that depositions in other litigation between him

 and Ms. Lindberg resulted in him “obtaining a protective order . . . that required Ms.

 Lindberg’s counsel to remain six feet away from Mr. Lindberg.”

¶ 78 Finally, Mr. Lindberg argues that despite the trial court acknowledging his

 deposition “could be affected by invocation of the Fifth Amendment privilege against

 self-incrimination” based on a then-pending criminal case, the trial court “[i]ronically

 . . . then sanctioned Mr. Lindberg for refusing to answer questions at his deposition.”

 (Emphasis in original.) Mr. Lindberg contends “the right to discovery must yield to

 the privilege against compulsory self-incrimination” such that the trial court “erred

 in sanctioning Mr. Lindberg based on his deposition testimony.” We address each of

 those arguments in turn.

¶ 79 First, Mr. Lindberg’s argument that there was no predicate order in place is

 inaccurate. The trial court’s order denying Dunhill’s motion for a protective order

 also denied Mr. Lindberg’s motion for a protective order. The trial court clearly

 denied Mr. Lindberg’s motion for a protective order because it separately denied Mr.

 Lindberg’s motion for a stay of proceedings. Thus, the order denying the motion for

 a protective order in practice relies on the denial of the motion for a stay of

 proceedings. Since the denial of a motion for a protective order can have the same

 effect as an order compelling discovery, i.e. creating the requisite predicate order,

 Lovendahl, 208 N.C. App. at 200, 702 S.E.2d at 534, we look to the trial court’s denial

 - 51 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 of the motion for a stay as well to evaluate the adequacy of any predicate order.

¶ 80 The trial court’s order denying Mr. Lindberg’s motion for a stay indicates Mr.

 Lindberg sought the stay because of pending criminal charges against him. The trial

 court’s unchallenged Findings of Fact, however, highlight that “none of the claims,

 counterclaims, or causes of action alleged by the parties in this matter require them

 to prove facts that share a nexus with, or are substantially similar to, the allegations

 made against Mr. Lindberg in the separate criminal proceedings against him.” Based

 on that fact and its subsequent analysis of Mr. Lindberg’s prejudice arguments, the

 trial court denied Mr. Lindberg’s motion for a temporary stay of proceedings.

¶ 81 The trial court’s unchallenged Findings of Fact indicate it expressly considered

 Mr. Lindberg’s upcoming deposition and rejected Mr. Lindberg’s arguments about

 prejudice caused by allowing that deposition to proceed:

 9. There is no unfair prejudice to Mr. Lindberg or
 Dunhill by denying Mr. Lindberg’s Motion for Temporary
 Stay. To the extent Mr. Lindberg believes it in his best
 interest, he has a right in this civil action to assert his Fifth
 Amendment rights to not answer questions propounded to
 him in discovery. Moreover, during the hearing of this
 motion, Mrs. Lindberg’s counsel voluntarily agreed that
 they would not ask Mr. Lindberg questions at his upcoming
 deposition about the facts contained in the Bill of
 lndictment attached as Exhibit 1 to Mr. Lindberg’s motion.
 10. Mr. Lindberg argues that he would be prejudiced
 by potentially having to invoke his Fifth Amendment right
 to refuse to answer questions at his upcoming deposition.
 However, the Court finds that no unfair prejudice would
 occur given the fact that Mr. Lindberg has failed to

 - 52 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 demonstrate a nexus of substantially similar facts or issues
 between his criminal proceeding and this civil action. . . .

¶ 82 The trial court also, as Mr. Lindberg highlights, converted into a binding court

 order the voluntary agreement of Ms. Lindberg’s counsel not “to question Mr.

 Lindberg at his upcoming deposition in this action regarding the facts contained in

 the Bill of Indictment . . . .” Thus, the trial court knew Mr. Lindberg’s deposition

 would go ahead when it ordered the denial of his motion for a temporary stay and

 motion for a protective order. It is reasonable to read that sequence of events as the

 trial court ordering Mr. Lindberg to attend his deposition, so we cannot find the trial

 court abused its discretion in viewing the denial of the motions for a temporary stay

 and for a protective order as the equivalent of an order compelling discovery and in

 sanctioning Mr. Lindberg for violating that order. See Myers, 269 N.C. App. 240, 837

 S.E.2d at 447–48 (“An abuse of discretion is a decision manifestly unsupported by

 reason or one so arbitrary that it could not have been the result of a reasoned

 decision.”).

¶ 83 Having determined the trial court did not abuse its discretion by treating the

 denial of Mr. Lindberg’s motions for a protective order and temporary stay as a

 predicate order, we address Mr. Lindberg’s argument he was improperly sanctioned

 for previous conduct by both him and Dunhill. As with Dunhill’s similar argument,

 Mr. Lindberg’s argument fails because he was sanctioned for his own new conduct.

 - 53 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 Looking just at Conclusion of Law 141 that Mr. Lindberg takes issue with in his brief,

 the trial court made it clear in the parts Mr. Lindberg omits that his own misconduct

 during the deposition justified its sanctions:

 141. The Court further concludes that Mr. Lindberg
 personally is subject to sanctions as a result of the many
 forms of misconduct he repeatedly employed during his
 personal deposition as described hereinabove. Mr. Lindberg
 and Dunhill have engaged in a long pattern of violating the
 discovery orders of this Court as well as the Rules of Civil
 Procedure. Mr. Lindberg’s personal deposition obstruction
 and misconduct is but the most recent in the long line of
 both his Dunhill’s [sic] repeated prior violations of this
 Court’s discovery orders and the discovery rules.

 (Emphasis added.) Unchallenged Findings of Fact 59–98 recount in great detail,

 across five different subsections of misconduct, the “multiple forms of intentional

 obstruction and delay repeatedly employed by Greg Lindberg at his deposition.”

 (Capitalization altered.) As just one example, the trial court included a table

 calculating the “5 HOURS 47 MINS” of deposition time “wasted due to Greg

 Lindberg’s repeated tardiness” over two days. (Emphasis in original in first

 quotation; capitalization altered in second quotation.) Thus, the court sanctioned Mr.

 Lindberg for his deposition misconduct alone and had ample support for its decision

 to do so.

¶ 84 Mr. Lindberg’s next argument is about his “reluctance or refusal to answer

 some questions” because of the prior protective order requiring Ms. Lindberg’s

 - 54 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 counsel to remain six feet away from him. Without reaching the issue of whether a

 protective order about physical distancing from another case could justify refusing to

 answer any questions in a deposition from this case where the trial court in this case

 had already denied a substantive motion for a protective order, we note that Mr.

 Lindberg’s deposition here did not even involve the attorney whose actions were the

 basis for the prior protective order. While the prior protective order covered “Counsel

 for Plaintiff,” which included one of Ms. Lindberg’s attorneys who deposed Mr.

 Lindberg in this case, it is clear from the prior protective order that the conflict that

 led to the protective order involved another attorney who was not present at Mr.

 Lindberg’s depositions in this case. Given the relevant attorney from the past conflict

 was not even present at this deposition, we reject any argument by Mr. Lindberg that

 this past history in any way impacts how we should view his “reluctance or refusal to

 answer some questions . . . .”

¶ 85 Finally, we reject Mr. Lindberg’s argument that the trial court erred by

 sanctioning him for refusing to answer questions at his deposition after

 acknowledging Mr. Lindberg’s deposition could be impacted by assertions of his Fifth

 Amendment privilege against self-incrimination. The key issue with Mr. Lindberg’s

 argument is that he never invoked his Fifth Amendment privilege during his

 deposition. “The Fifth Amendment privilege against compelled self-incrimination is

 not self-executing.” Roberts v. U.S., 445 U.S. 552, 559, 100 S. Ct. 1358, 1364 (1980).

 - 55 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 In the case of “the ordinary witness at a trial or before a grand jury who is

 subpoenaed, sworn to tell the truth, and obligated to answer on the pain of contempt,”

 that person must “appear and answer questions truthfully . . . unless he invokes the

 privilege and shows that he faces a realistic threat of self-incrimination.” Minnesota

 v. Murphy, 465 U.S. 420, 427, 104 S. Ct. 1136, 1142 (1984). A person’s invocation of

 the Fifth Amendment privilege must be express. Communist Party of U.S. v.

 Subversive Activities Control Bd., 367 U.S. 1, 108, 81 S. Ct. 1357, 1416 (1961)

 (“Nevertheless, it is not and has never been the law that the privilege disallows the

 asking of potentially incriminatory questions or authorizes the person of whom they

 are asked to evade them without expressly asserting that his answers may tend to

 incriminate him.” (emphasis added)). While “no ritualistic formula or talismanic

 phrase is essential in order to invoke the privilege against self-incrimination,” the

 language of invocation at least needs to be such that a person “may reasonably be

 expected to understand [it] as an attempt to invoke the privilege.” Emspak v. U.S.,

 349 U.S. 190, 194, 75 S. Ct. 687, 690 (1955). For example, the United States Supreme

 Court has held language with references to the Fifth Amendment, even without

 identifying the privilege specifically, is sufficient to invoke the privilege. Id.

¶ 86 Here, Mr. Lindberg never expressly invoked the privilege in the required

 manner. With one exception explained below, nothing related to the Fifth

 Amendment privilege against self-incrimination even came up in the transcript of

 - 56 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 Mr. Lindberg’s deposition.8 Rather, Mr. Lindberg instead decided to repeatedly—

 over 100 times according to the unchallenged Findings of Facts—say he “can’t

 comment on that.” The use of the phrase, “I can’t comment on that” was not language

 that a person could “reasonably be expected to understand as an attempt to invoke

 the privilege” because it does not reference the privilege or even the Fifth

 Amendment. Id. As such, none of those instances can be considered invocations of

 Mr. Lindberg’s Fifth Amendment privilege.

¶ 87 The one time the Fifth Amendment came up in the transcript of Mr. Lindberg’s

 deposition—in response to one of Mr. Lindberg’s “I can’t comment” answers—, Ms.

 Lindberg’s counsel expressly asked Mr. Lindberg if he was intending to invoke his

 privilege and Mr. Lindberg’s counsel specifically told him he did not have to answer

 if he was intending to invoke his Fifth Amendment privilege:

 Q. Refuse to answer. Did you not authorize Tisha
 Lindberg to sign your name on multiple documents?
 A. I can’t comment on that.
 Q. Refuse to answer that question?
 A. I can’t comment on it.
 Q. Well, if you can’t comment, that to me means
 you are refusing to comment or answer.
 A. No. Saying I can’t comment is a comment.
 Q. Why can’t you comment? Mr. Lindberg, is the
 reason – one of the reasons you can’t comment on many of

 8 We searched the transcript for the following words “fifth”; “5 th”; “amendment”; “privilege”; and
 “incrimination” and found no responses that discussed the Fifth Amendment privilege against self-
 incrimination other than the instance discussed in the main text. The search for the word “privilege”
 revealed numerous references to attorney-client privilege as well as a couple of references to
 professional-patient privilege, but Mr. Lindberg does not make any arguments about those privileges.

 - 57 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 these questions is because you intend to plead the Fifth
 Amendment?
 Mr. Pace: Objection. You don’t have to answer
 that.
 Mr. Zaytoun: This is a civil case.
 Mr. Pace: Yes. And you’ve already represented to
 a judge that you wouldn’t ask him any questions about
 that.
 By Mr. Zaytoun:
 Q. Mr. Lindberg, is it – is it your intention to
 plead the Fifth Amendment to any of these questions that
 I’ve asked you where you said you can’t comment?
 Mr. Pace: You don’t have to answer that. I’ll
 instruct you not to answer.
 Mr. Zaytoun: All right. Certify that. On what
 – would you state for the record the basis upon which you’re
 instructing him not to answer that question.
 Mr. Pace: Because you represented to the judge
 that you would not use this case for discovery of any of the
 criminal proceedings.
 Mr. Zaytoun: No. This has nothing to do with
 the North Carolina indictment, my question.
 Mr. Pace: Oh, you’re –
 Mr. Zaytoun: It has no- -- has – this has to do
 with Dunhill.[ ]
 9

 Mr. Pace: We disagree.

In this case, Ms. Lindberg’s counsel, rather than Mr. Lindberg or his counsel, made

the reference to the Fifth Amendment privilege. The language Mr. Lindberg and his

counsel used cannot be reasonably interpreted as an invocation. Unsurprisingly, as

9 In unchallenged Findings of Fact, the trial court found the indictment in question did not mention

Dunhill or Ms. Lindberg and did “not refer to facts or issues that create a nexus with, or are
substantially similar to, the facts or issues involved in this civil action.” Thus, by asking about Ms.
Lindberg and Dunhill, Ms. Lindberg’s attorney did not run afoul of the court order to not question Mr.
Lindberg “regarding facts contained in” the indictment.

 - 58 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 a result, Ms. Lindberg’s counsel had to follow-up to clarify if Mr. Lindberg was

 invoking the privilege only for Mr. Lindberg’s counsel to direct Mr. Lindberg not to

 answer whether he was invoking or not. Thus, Mr. Lindberg, through actions of his

 counsel, made a choice to not clarify he was expressly invoking his Fifth Amendment

 privilege as he was required to do to gain the privilege’s protection. Emspak, 349

 U.S. at 194, 75 S. Ct. at 690.

¶ 88 Since Mr. Lindberg never invoked his Fifth Amendment privilege against self-

 incrimination, the trial court could not have sanctioned him for such invocation, as

 he now argues. We therefore reject that argument and find the trial court did not

 abuse its discretion in sanctioning Mr. Lindberg for his deposition conduct.

 B. Dunhill’s 30(b)(6) argument

¶ 89 In the final argument against the sanctions for deposition conduct, Dunhill

 contends “the trial court misconstrued Rule 30(b)(6).” (Capitalization altered.) Rule

 of Civil Procedure 30(b)(6) provides:

 A party may in his notice and in a subpoena name as the
 deponent a public or private corporation or a partnership
 or association or governmental agency and describe with
 reasonable particularity the matters on which examination
 is requested. In that event, the organization so named shall
 designate one or more officers, directors, or managing
 agents, or other persons who consent to testify on its
 behalf, and may set forth, for each person designated, the
 matters on which he will testify. A subpoena shall advise a
 nonparty organization of its duty to make such a
 designation. It shall not be necessary to serve a subpoena

 - 59 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 on an organization which is a party, but the notice, served
 on a party without an accompanying subpoena shall clearly
 advise such of its duty to make the required designation.
 The persons so designated shall testify as to matters known
 or reasonably available to the organization. This subsection
 (b)(6) does not preclude taking a deposition by any other
 procedure authorized in these rules.

 N.C. Gen. Stat. § 1A-1, Rule 30(b)(6) (emphasis added). Dunhill’s argument focuses

 on the meaning of the phrase “known or reasonably available” in the second to last

 sentence. Since this argument involves a review of the trial court’s interpretation of

 a statute, we review it de novo. Myers, 269 N.C. App. at 240–41, 837 S.E.2d at 447–

 48.

¶ 90 After saying “[t]here are no North Carolina appellate opinions regarding the

 scope of Rule 30(b)(6),” Dunhill proceeds to make five arguments based primarily on

 analogies to federal law. We reject all of Dunhill’s arguments without addressing the

 scope of Rule 30(b)(6) under North Carolina law. Rather, Dunhill’s arguments all fail

 based on the unchallenged, and therefore binding, Findings of Fact even when

 applying the law with which it argues. See Feeassco, 264 N.C. App. at 340, 826 S.E.2d

 at 211 (holding unchallenged Findings of Fact are binding on appeal). As a result for

 each of Dunhill’s five arguments, we first present the law on which Dunhill relies

 directly from its brief and then explain why the facts here do not conform to that law’s

 requirements.

¶ 91 Dunhill’s first argument focuses on the preparation of deponents:

 - 60 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 When it comes to preparation for the deposition, the
 touchstone of this Rule is reasonableness. See, e.g., Brazos
 River Auth. v. GE Ionics, Inc., 469 F.3d 416, 432-33 (5th
 Cir. 2006).[footnote omitted] Recognizing that “an
 individual cannot be expected to know every possible
 aspect of the organization’s inner workings,” courts have
 invariably acknowledged that the “standard for sanctions
 in this context is high.” Runnels v. Norcold, Inc., No. 1:16-
 cv-713, 2017 WL 3026915, at *1 (E.D. Va. Mar. 30, 2017)
 (unpublished) [Add. 84] (citing cases). A designee is not
 expected to present “a fully reliable and sufficiently
 complete account of all the bases for the contentions made
 and positions taken by the corporate party.” Stoneeagle
 Servs., Inc. v. Pay-Plus Sols., Inc., No. 8:13-CV-2240-
 T33MAP, 2015 WL 12843846, at *2 (M.D. Fla. Apr. 29,
 2015) (unpublished) [Add. 88].

 (All alterations in original exception noting omission of footnote.) Dunhill then

 recounts how its witnesses were “well prepared” and “testified for two entire days

 regarding the requested topics creating more than 700 pages of testimony.”

¶ 92 The cases Dunhill presents indicate that reasonableness means that the

 designated individuals do not have to know everything completely but rather must

 know a reasonable amount and be reasonably prepared to answer questions. While

 Dunhill’s designees may have testified to some topics, they seemingly lacked any

 preparation or knowledge as to certain other topics. For example, the unchallenged

 Findings of Fact indicate one of Dunhill’s designees, Mr. Neal, was unable to answer

 any questions about electronic devices used by Mr. Lindberg and had not even

 attempted to learn that information prior to his deposition:

 - 61 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

38. During the questioning of Mr. Neal, he was completely
unprepared to address many of his designated topics. Most
notably, Mr. Neal was unable to address Topic 49
regarding Mr. Lindberg’s electronic devices and computers,
which stated:
 All Computers and electronic devices used by Greg
 Lindberg from January 1, 2014 to the present,
 including:
 a. Number, types and locations
 b. Operating systems with versions, dates of
 use and upgrade history
 c. Application software with versions, dates of
 use and upgrade history.
39. Mr. Neal testified at deposition, on behalf of Dunhill,
that he did not know this information, he did not learn this
information prior to the deposition, nor had he ever
attempted to ask Mr. Lindberg personally to identify Mr.
Lindberg’s computers and devices. Instead, Mr. Neal
merely sent an email to two people who work for Mr.
Lindberg about Mr. Lindberg’s electronic devices, but
never received a response to his email and did not follow
up. This represents a clear and total failure of Dunhill to
testify in response to Topic 49 during its deposition, in
direct violation of this Court’s 5 June 2019 Order on
Dunhill and Mr. Lindberg’s Motion for Protective Order
described above.
40. Mr. Neal was also unable to identify the location of the
servers that house the parties’ emails, which Dunhill was
required to be prepared to identify under deposition Topics
44, 60, 67 and 71. Mr. Neal could only identify the third-
party email hosting service provider that Dunhill utilizes,
but he could not identify the location of any of the servers.
When pressed on his inability to provide the location of the
email servers, Mr. Neal testified that he was confused
about the meaning of the word “location” and thought that
it meant something other than its plain English meaning.
This, too, represents a failure of Dunhill to adequately
testify in response to Topics 44, 60, 67 and 71, in direct
violation of this Court’s 5 June 2019 Order on Dunhill and

 - 62 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 Mr. Lindberg’s Motion for Protective Order described
 above.

¶ 93 As the portion about Mr. Neal believing the word “location” had something

 other than its ordinary meaning indicates, Dunhill also cannot claim the two days

 and 700 pages of testimony from its witnesses all shows its compliance either.

 Further to that point, the trial court specifically found Dunhill’s other designee, Ms.

 Lynch, “intentionally and repeatedly gave evasive and longwinded responses to

 interfere with the deposition time available . . . .” Given these Findings alone, Dunhill

 cannot credibly claim that its designees were even reasonably prepared to testify as

 to the designated topics.

¶ 94 Dunhill’s second argument is not based on any new law; instead, Dunhill

 argues that the trial court “summarily found that Dunhill ‘did not provide a witness

 prepared to testify as to the Rule 30(b)(6) designated deposition topics’—apparently

 all 73 of them.” In making this contention, Dunhill omits the critical opening part of

 the quote indicating that the trial court was referring to the specific topics it had

 already discussed:

 As articulated above, Dunhill (necessarily acting by and
 through its sole owner, member, and manager, Mr.
 Lindberg) did not provide a witness prepared to testify as
 to the Rule 30(b)(6) designated deposition topics and
 provide the responsive information known or reasonably
 available to the organization. Dunhill (and by necessary
 extension Mr. Lindberg) has, therefore, violated the
 Court’s 5 June 2019 discovery Order and is subject to

 - 63 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 sanctions for failing to comply with the same pursuant to
 Rule 37(b).

 (Emphasis added.) With the full quote, it is clear the trial court was not saying

 Dunhill had failed to provide a prepared witness for all 73 topics. The trial court was

 saying it had not provided a prepared witness for the topics it already discussed,

 including those it incorporated by reference to the corrected motion for sanctions,

 above in its Findings of Fact. Thus to the extent Dunhill argues the trial court erred

 by finding it did not present a prepared witness for all 73 topics, we reject that

 argument.

¶ 95 Dunhill’s final three arguments all are responding to the basis for the trial

 court’s above conclusion, as they “appear[]” to Dunhill. With each of these arguments,

 Dunhill presents more law justifying its position, and as with the first argument, we

 reject Dunhill’s contentions as their proffered law applies to the facts here.

¶ 96 Dunhill first claims the basis for the sanctions for failure to present a prepared

 witness was “that the witness referred to documents produced in litigation.” For its

 supporting law, Dunhill stated:

 Referring to documents was proper because “Rule 30(b)(6)
 is not designed to be a memory contest.” Risinger v. SOC,
 LLC, 306 F.R.D. 655, 663 (D. Nev. 2015); see also Runnels,
 2017 WL 3026915, at *1 [Add. 84] (explaining that
 organizational representatives “are not expected to be a
 corporate encyclopedia”). There is no requirement “that a
 Rule 30(b)(6) witness be able to testify at a deposition
 without referencing documentation to supplement the

 - 64 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 testimony.” BreathableBaby, LLC v. Crown Crafts, Inc.,
 No. 12-cv-94 (PJS/TNL), 2013 WL 3350594, at *8 (D. Minn.
 May 31, 2013) (unpublished) [Add. 25], adopted by 2013
 WL 3349999 (D. Minn. July 1, 2013). Thus, the fact that a
 witness has to review documents before answering
 questions does not make the witness unfit. Baker v. St.
 Paul Travelers Ins. Co., 670 F.3d 119, 125 (1st Cir. 2012).

 Dunhill then argues its witnesses acted properly because they “repeatedly stated that

 answers could be found in the documents that had been produced.”

¶ 97 Without even relying on our above conclusion affirming the sanctions against

 Dunhill for its document production on the eve of this deposition, the law Dunhill

 cites does not help it here. As seen in the last case Dunhill cites, that law is about

 whether a witness can review documents before answering questions, not whether

 they can use documents in place of their answer. The latter—i.e. using documents in

 place of their answer—appears to be what happened here even in the examples

 Dunhill provides. For example, it cites to a portion of Ms. Lynch’s deposition where

 she indicates a produced document might exist that answers the question:

 Here, the witnesses repeatedly stated that answers could
 be found in the documents that had been produced. (See,
 e.g., Lynch Depo.(II) 283 (“Q. What specific facts support
 that . . . allegation? A. There would be bank statements,
 bank ledgers that would show when the withdrawals were
 – were made, when items were paid and for what.”)).

 Here, in addition to the fact that Ms. Lynch is using a document instead of answering,

 she is not even citing to a specific document but rather says there “would be,” i.e.

 - 65 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 without certainty, support in some documents that presumably were produced. This

 non-answer does not in any way resemble the acceptable means laid out by Dunhill’s

 proffered law above. Underlining the inadequacy of using a vague reference to

 potential documents in place of answers, the trial court specifically found that Ms.

 Lynch “could not identify any specific document or email from the hundreds of

 thousands of pages of the discovery” to support Dunhill’s allegations. For these

 reasons, we reject this argument.

¶ 98 Turning to its fourth argument, Dunhill contends the trial court improperly

 concluded its witnesses were not prepared because “the witnesses could not recall

 certain information, such as the exact date of events.” To support this argument,

 Dunhill provides the following law and argument:

 Likewise, the witnesses properly testified to the best of
 their recollection. A witness “cannot be expected to have
 predicted the exact questions she would face in deposition.”
 BreathableBaby, 2013 WL 3350594, at *8 [Add. 25]. Thus,
 the fact that a witness does not have all information at her
 fingertips is not surprising. Even an imperfect deposition
 is not subject to sanctions. Runnels, 2017 WL 3026915, at
 *3 [Add. 85]. This is particularly true when the questions
 relate to conduct by individuals. (See, e.g., Lynch Depo.(II)
 370-71 (asking Ms. Lynch about Ms. Lindberg’s allegations
 regarding promises made by Mr. Lindberg)).

 Again, Dunhill overlooks the extent to which its designees were completely

 unprepared as to certain topics. The case law it cites is about whether a witness

 should be expected to predict the exact questions in a deposition and to have all the

 - 66 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 information at its fingertips. Here, Dunhill’s deponents did not have any information

 on certain topics, as laid about above. Put another way, this was not an imperfect

 deposition; as to certain topics on which the designees provided no answers, this

 deposition in effect did not happen at all.

¶ 99 Dunhill’s final argument is that the trial court erred by faulting Dunhill’s

 designees when they “could not comprehensively explain Dunhill’s legal theories.” To

 support this contention, Dunhill included the following law and argument:

 Finally, the designees could not have been expected to
 testify about legal theories beyond their basis for the
 allegations. (See Lynch Depo.(II) 236-38, 246-47, 328-30,
 458-59). As the Business Court has recognized, it is
 “impracticable” for a company “to prepare one or more
 witnesses to testify about ‘all facts’ and ‘all evidence’ that
 support more than half a dozen claims and defenses.”
 Addison Whitney, LLC v. Cashion, 2020 NCBC 48 ¶ 112,
 2020 WL 3096793, at *19 (June 10, 2020) (unpublished)
 [Add. 16]. Yet, that is precisely what Ms. Lindberg’s
 counsel expected.

 The 30(b)(6) designees appropriately limited their
 testimony to facts rather than legal theories. Sanctions are
 improper when the deponent was “able to testify regarding
 the evidence and facts underlying the allegations.” FTC v.
 Vylah Tec LLC, No. 2:17-cv-228-FtM-PAM-MRM, 2018 WL
 7361111, at *3 (M.D. Fla. Dec. 18, 2018) (unpublished)
 [Add. 46]. Indeed, this Court has indicated that a 30(b)(6)
 witness is not expected to testify about the law at all.
 Bullard v. Wake Cty., 221 N.C. App. 522, 535, 729 S.E.2d
 686, 694 (2012); see also Snapp v. United Transp. Union,
 889 F.3d 1088, 1104 (9th Cir. 2018) (similar), cert. denied,
 139 S. Ct. 817 (2019). Thus, Ms. Lindberg’s counsel had no
 basis to complain when he asked “You’re really not a very

 - 67 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 knowledgeable corporate designee, are you . . . about
 Dunhill if you can’t even tell me the basics of what Dunhill
 is, what an LLC is versus a corporation”? (Lynch Depo.(II)
 424).

¶ 100 Dunhill’s arguments can be broken down into two. First, as the cite to the

 North Carolina business court indicates, Dunhill is arguing that a designee cannot

 be expected to know all facts or evidence to support a number of claims. The problem

 with that argument, as with similar arguments above, is that Dunhill’s designees did

 not provide any evidence. The trial court’s unchallenged Finding of Facts indicate

 that Ms. Lynch “was completely unprepared to provide any specific information or

 knowledge to explain the basis for any of Dunhill’s claims or allegation categories

 listed in topics 1 or 2” (emphasis added), which were the two topics that related to the

 basis for Dunhill’s claims against Ms. Lindberg.

¶ 101 The second piece of Dunhill’s argument is that the sanctions improperly

 faulted its designees for not providing legal theories. Again, this argument does not

 comport with the August 2019 Order, which specifically faulted the designees for not

 being able to provide evidence rather than legal theories. For example, the trial court

 found Ms. Lynch could not identify evidence to support any of the claims in the

 Dunhill lawsuit:

 Importantly, Ms. Lynch was never able to identify a single
 document, communication, or other piece of evidence that
 Dunhill knew of or contended was supportive of any of the
 claims or allegations in the Dunhill lawsuit.

 - 68 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 As the trial court noted:

 This is especially troubling given that Dunhill has
 represented to this Court, through its counsel, that it
 possesses specific emails, text messages, photographs, and
 other materials it contends supports Dunhill’s claims and
 allegations against Mrs. Lindberg. See e.g. Dunhill’s 11
 July 2019 Verified Response to [Corrected] Tisha L.
 Lindberg’s Motion for Sanctions Regarding Deposition of
 Dunhill Holdings, LLC, at page 2, in which Dunhill’s
 counsel describes specific “emails,” “text messages,”
 “pictures,” “bank records,” as well as Mrs. Lindberg’s
 “written assurance” and “admissions,” all of which Dunhill
 claims are in its possession and knowledge as supportive of
 its claims against Mrs. Lindberg in this action.

 These findings make it clear Dunhill was sanctioned because its designees could not

 provide evidence rather than because they failed to supply legal theories.

¶ 102 As we have rejected each of Dunhill’s Rule 30(b)(6) arguments, we find the trial

 court did not err here either. Thus, we find no error by the trial court with regard to

 any of its sanctions for Appellants’ deposition misconduct and failures.

 VI. Choice of Sanctions

¶ 103 Appellants’ final arguments that take issue with the August 2019 Order

 present a series of alleged errors under the heading, “Even if the court had the

 authority, the choice of sanctions was improper.” (Capitalization altered.) First, both

 Appellants argue “[t]here is a disconnect between the purported violations and the

 sanctions imposed.” (Capitalization altered.) Both Appellants also contend the

 - 69 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 August 2019 Order “is internally inconsistent.” Finally, Mr. Lindberg presents two

 arguments on his own that the August 2019 Order “impermissibly allows for

 disclosure of privileged information” and that “[t]here was not proper notice” as to the

 basis of sanctions against him. We address each of those arguments in turn.

 A. Disconnect Argument

¶ 104 Appellants’ first argument about the disconnect between the violations and the

 sanctions is really a series of arguments that amounts to the contention that the

 choice of sanctions was improper. First, Appellants argue the trial court improperly

 believed that it had “unfettered discretion.” Then, Appellants argue discovery

 sanctions under Rule 37 “must be equitable.” As part of this argument, Appellants

 contend, by relying on federal court cases, default judgment and taking a party’s

 allegations as established are powerful and should only be used in the most extreme

 circumstances. Appellants further support their equity argument by indicating

 North Carolina has a policy favoring deciding cases on the merits rather than entry

 of default judgment. Finally, Dunhill argues the August 2019 Order “is especially

 problematic because it deemed certain facts ‘established’ even though they are

 contrary to the record evidence,” particularly on the allegation that Mr. Lindberg is

 the alter ego of Dunhill.

¶ 105 Appellants’ first argument omits a key portion of the sentence that shows the

 trial court understood its discretion was subject to limits. Specifically, the full

 - 70 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 sentence in the trial court order says, “[T]he tailoring of sanctions in a particular case

 is limited only by the judge’s imagination and the possibility of appellate review.”

 (Emphasis added to show the part omitted by the parties.) Thus, the trial judge knew

 he did not have unfettered discretion and was subject to appellate review. In fact,

 looking at the surrounding Conclusions of Law, the trial court explained in detail how

 it was subject to the abuse of discretion standard on appeal and how “North Carolina

 appellate courts have routinely affirmed the trial court’s decision to impose severe

 sanctions for discovery abuses and violations of court orders including dismissing

 actions and claims, and striking pleadings.”

¶ 106 The trial court further acted within the discretion described by Turner v. Duke

 University, the case which Appellants highlight as being applied in error, in imposing

 sanctions. 101 N.C. App. 276, 399 S.E.2d 402 (1991). As Appellants note, Turner

 differentiates between the discretion offered by statutes that do not authorize specific

 types of sanctions (Rules of Civil Procedure 11 and 26) and statutes that do, such as

 Rule of Civil Procedure 37(b)(2). Id., 101 N.C. App. at 279–80, 399 S.E.2d at 405.

 The trial court here followed the strictures of Rule 37. As relevant here, Rule 37(b)(2)

 authorizes the following types of sanctions:

 a. An order that the matters regarding which the order was
 made or any other designated facts shall be taken to be
 established for the purposes of the action in accordance
 with the claim of the party obtaining the order;
 b. An order refusing to allow the disobedient party to

 - 71 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 support or oppose designated claims or defenses, or
 prohibiting the party from introducing designated matters
 in evidence;
 c. An order striking out pleadings or parts thereof, or
 staying further proceedings until the order is obeyed, or
 dismissing the action or proceeding or any part thereof, or
 rendering a judgment by default against the disobedient
 party;

 N.C. Gen. Stat. § 1A-1, Rule 37(b)(2)(a)–(c). Rule 37 also authorizes the trial court to

 order the party failing to obey a court order “to pay reasonable expenses, including

 attorney’s fees” in certain situations. Id., Rule 37(b)(2). Here, all the trial court’s

 sanctions under Rule 37(b)(2) adhered to those categories. The remainder of the

 sanctions all related to ordering discovery to continue or rejecting certain objections

 made in discovery, so they fit within Rule 37(a)(2)’s allowance of an order compelling

 discovery. N.C. Gen. Stat. §1A-1, Rule 37(a)(2). Thus, Appellants incorrectly assert

 the trial court believed it had unfettered discretion; the trial court understood its

 discretion was subject to limits, and it stayed within those limits. The trial court did

 not abuse its discretion.

¶ 107 Turning to Appellants’ next argument, both misinterpret what our courts

 mean when they say sanctions must be just. While the “as just” language comes

 directly from Rule 37(b)(2), see N.C. Gen. Stat. § 1A-1, Rule 37(b)(2) (authorizing the

 court to “make such orders in regard to the failure [to comply with a discovery order]

 as are just”), our courts have indicated the language refers to the grant of discretion

 - 72 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 to the trial court. See Stone v. Martin, 69 N.C. App. 650, 652, 318 S.E.2d 108, 110

 (1984) (citing the language about justness immediately before saying, “The matter

 thus is within the trial courts discretion.” (emphasis added)); Global Furniture, Inc.

 v. Proctor, 165 N.C. App. 229, 232, 598 S.E2d 232, 234 (2004) (“The trial court is given

 broad discretion to ‘make such orders in regard to the failure as are just’ . . . .”

 (quoting N.C. Gen. Stat. § 1A-1, Rule 37(b))). As a result, the trial court has only

 failed to impose sanctions as are just if it has abused its discretion.

¶ 108 As noted above, the trial court only imposed those sanctions specifically

 authorized by Rule 37(b)(2) and did not abuse its discretion in that manner. Beyond

 that, generally “[t]he choice of sanction under Rule 37 lies within the court’s

 discretion and will not be overturned on appeal absent a showing of abuse of that

 discretion.” Routh v. Weaver, 67 N.C. App. 426, 429, 313 S.E.2d 793, 795 (1984).

 Before a court imposes severe sanctions, such as dismissing an action with prejudice,

 it “must consider less severe sanctions.” See Hursey v. Homes by Design, Inc., 121

 N.C. App. 175, 179, 464 S.E.2d 504, 507 (1995) (“[B]efore dismissing a party’s claim

 with prejudice pursuant to Rule 37, the trial court must consider less severe

 sanctions.”) (citing Goss v. Battle, 111 N.C. App. 173, 177, 432 S.E.2d 156, 159 (1993)).

 Critically, “[t]he trial court is not required to impose lesser sanctions, but only to

 consider lesser sanctions.” Global Furniture, 165 N.C. App. at 233, 598 S.E.2d at 235

 (emphasis in original) (citing Goss, 111 N.C. App. at 177, 432 S.E.2d at 159).

 - 73 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

¶ 109 In determining whether the trial court properly considered lesser sanctions,

 this Court has noted, “the trial court is not required to list and specifically reject each

 possible lesser sanctions prior to determining that dismissal is appropriate.” Batlle,

 198 N.C. App. at 421, 681 S.E.2d at 798 (quoting Badillo v. Cunningham, 177 N.C.

 App. 732, 735, 629 S.E.2d 909, 911 (2006)). Language stating the trial court

 considered lesser sanction but had reason to impose the more severe sanctions is

 sufficient. In Batlle, this Court found the following statements sufficient to determine

 the trial court had not abused its discretion by failing to consider less severe

 sanctions:

 The trial court found in the 21 September 2007 order that:

 The Court has considered lesser discovery sanctions,
 and dismissal of Plaintiff’s lawsuit with prejudice is
 the only just and appropriate sanction in view of the
 totality of the circumstances of the case, which
 demonstrate the severity of Plaintiff’s disobedience
 in failing to make discovery in a lawsuit she
 instituted and her unjustified noncompliance with
 the mandatory North Carolina Rules of Civil
 Procedure.

 Based upon this finding, the trial court concluded in the 21
 September 2007 order that:

 The Court has considered lesser sanctions than
 dismissal of Plaintiff’s lawsuit with prejudice.
 Lesser sanctions would be unjust and inappropriate
 in view of the totality of the circumstances of the
 case, which demonstrate the severity of the
 disobedience of Plaintiff in refusing to make

 - 74 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 discovery in a lawsuit she instituted, her unjustified
 noncompliance with the mandatory North Carolina
 Rules of Civil Procedure, and untimely response on
 the day of the hearing.

 Id., 198 N.C. App. at 421–22, 681 S.E.2d at 798–99. This Court reached that

 conclusion because that language was similar to language this Court had previously

 found acceptable in both In Re Pedestrian Walkway Failure and Cunningham. Id.,

 198 N.C. App. at 422, 681 S.E.2d at 798–99; see also Baker v. Charlotte Motor

 Speedway, Inc., 180 N.C. App. 296, 301, 636 S.E.2d 829, 833 (2006) (finding no abuse

 of discretion when similar language was used). By contrast, the trial court abuses its

 discretion when it only considers one option and even admits it did not consider lesser

 sanctions. See Global Furniture, 165 N.C. App. at 234, 598 S.E.2d at 235 (finding

 abuse of discretion on those facts).

¶ 110 Here, the trial court properly considered lesser sanctions. In a heading entitled

 “Consideration of Lesser Sanctions,” the trial court made nine Findings of Fact

 recounting how it considered the arguments of Dunhill and Mr. Lindberg for lesser

 sanctions and ultimately rejected them. Before laying out the fact-specific reasons

 why lesser sanctions would not be effective here, including the past failures of lesser

 sanctions to ensure compliance, the trial court said:

 The Court, in its discretion, has considered all available
 sanctions in light of Dunhill and Mr. Lindberg’s actions
 described herein, including specifically whether sanctions
 lesser than those requested in Mrs. Lindberg’s Motions

 - 75 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 would be appropriate. The Court, in its discretion, finds
 that the evidence before it shows that that [sic] lesser
 sanctions would not be appropriate based on the conduct
 and repeated discovery abuses of Dunhill and Mr.
 Lindberg, nor would lesser sanctions achieve the desired
 effect of correcting and/ or deterring the misconduct of
 Dunhill and Mr. Lindberg described herein.

 This paragraph alone is similar to the paragraph this Court previously found was

 sufficient in Batlle. 198 N.C. App. at 421–22, 681 S.E.2d at 798–99.

¶ 111 In addition to sufficient analysis in the Findings of Fact alone, the trial court

 included a similarly detailed analysis in its Conclusions of Law under the heading,

 “Harsh Sanctions are Warranted Here.” After recounting the previous misconduct

 by Dunhill and Mr. Lindberg as well as its discretionary authority to impose harsh

 sanctions, the trial court indicated again that it had considered all sanctions and gave

 its reasoning for why lesser sanctions were not enough:

 162. The Court, in its discretion, has considered all
 available sanctions in light of Dunhill and Mr. Lindberg’s
 actions described herein, including specifically whether
 sanctions lesser than those requested in Mrs. Lindberg’s
 Motions would be appropriate. The Court, in its discretion,
 finds that the evidence before it shows that that [sic] lesser
 sanctions would not be appropriate nor would they achieve
 the desired effect of correcting and/ or deterring the
 misconduct of Dunhill and Mr. Lindberg described herein.
 163. The Court concludes that monetary sanctions are not
 likely to have any beneficial effect on either Mr. Lindberg
 or Dunhill in deterring either from furthering their efforts
 to evade their discovery obligations or from future conduct
 in clear violation of this Court’s discovery orders.
 164. The Court likewise concludes that lesser discovery

 - 76 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 sanctions such as requiring Dunhill or Mr. Lindberg to sit
 for additional deposition sessions, or provide additional
 discovery by a date certain, are not likely to have any
 beneficial effect on either Mr. Lindberg or Dunhill in
 deterring either from furthering their efforts to evade their
 discovery obligations or from future conduct in clear
 violation of this Court’s discovery orders.
 165. In summary, Dunhill and Mr. Lindberg have made it
 clear that they believe the litigation process is a game, one
 where they make all the rules, regardless of what this
 Court orders or the rules of discovery say to the contrary,
 and, therefore, striking pleadings is the only appropriate
 remedy to redress their misconduct.

 Based on Batlle, Conclusion 162 alone was enough for us to conclude that the trial

 court did not abuse its discretion. 198 N.C. App. at 421–22, 681 S.E.2d at 798–99.

 Here, the trial court went above and beyond what was required, laying out in detail

 its reasoning why lesser sanctions were not enough. Given this explanation, the trial

 court did not abuse its discretion in its choice of sanction.

¶ 112 In their reply briefs, Appellants argue the caselaw requiring a court to consider

 lesser sanctions misses the point of their argument. They explain their argument is

 that even if the trial court “had the authority to enter sanctions, the sanctions

 imposed were excessive.” This argument seemingly relates back to Appellants’

 arguments that (1) default judgment and taking a party’s allegations as established

 are powerful and should only be used in the most extreme circumstances and (2)

 North Carolina has a policy favoring deciding cases on the merits rather than

 entering default judgment. Both of these arguments, while generally true and

 - 77 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 persuasive, are not controlling here.

¶ 113 The first argument about default judgment only being used in the most

 extreme circumstances is not persuasive in part because of the authority Appellants

 use to support it. In making the argument, Appellants rely exclusively on federal

 caselaw, rather than North Carolina precedents. Federal cases may be persuasive in

 other areas of interpreting our Rules of Civil Procedure given some overlap in design.

 See Harvey Fertilizer & Gas Co. v. Pitt County, 153 N.C. App. 81, 87, 568 S.E.2d 923,

 927 (2002) (looking to federal court decisions for guidance because Rule 24 of the

 North Carolina Rules of Civil Procedure was “virtually identical” to the federal rule

 before stating “we are not bound by the interpretation of any particular federal court

 as to the interpretation of our own rules of civil procedure) (citing, inter alia, Turner

 v. Duke University, 325 N.C. 152, 164, 381 S.E.2d 706, 713 (1989) for the first point

 of looking to federal courts for guidance and State ex rel. Martin v. Preston, 325 N.C.

 438, 449–50, 385 S.E.2d 473, 479 (1989) for the second point of not being bound by

 the federal courts).

¶ 114 On the issue of choice of sanctions, however, our precedents have explicitly

 rejected the federal approach. See Hursey, 121 N.C. App. at 179, 464 S.E.2d at 507

 (summarizing Fulton v. East Carolina Trucks, Inc., 88 N.C. App. 274, 275, 362 S.E.2d

 868, 869 as “specifically rejecting plaintiff’s argument that North Carolina courts

 should adhere to the rule adopted in the federal courts that dismissal with prejudice

 - 78 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 is a last resort and is generally proper only where less drastic sanctions are

 unavailable”). As this Court explained in Fulton:

 Although the federal rule is laudable and best serves the
 judicial preference in favor of deciding cases on the merits,
 our courts have not adopted the federal rule. Indeed, this
 court’s precedent all but expressly rejects the notion of
 progressive sanctions. This court has upheld dismissals in
 several cases when no previous less stringent sanction was
 ordered.

 88 N.C. App. at 275, 362 S.E.2d at 869 (collection of cases omitted). Thus, we reject

 Appellants’ argument that we should follow federal caselaw indicating default

 judgment should only be used in the most extreme case.

¶ 115 While Appellants rely upon North Carolina caselaw in arguing this state has

 a policy favoring deciding cases on the merits rather than entering default judgment,

 they misunderstand that precedent, which works hand-in-hand with the requirement

 that courts consider lesser sanctions. By considering lesser sanctions, the trial court

 is doing the very thing for which Appellants press, ensuring that this case is one

 where it should impose a harsh penalty in spite of the general policies disfavoring

 default judgment and favoring trial on the merits. See Stone, 69 N.C. App. at 653–

 54, 318 S.E.2d at 111 (highlighting the law disfavors default judgments so as to allow

 as many cases as possible to reach trial on the merits); American Imports, Inc. v. G.E.

 Emp. Western Region Federal Credit Union, 37 N.C. App. 121, 124, 245 S.E.2d 798,

 800 (1978) (explaining the general purpose of the Rules of Civil Procedure is “to

 - 79 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 encourage trial on the merits” (quotations and citation omitted)). Here, the trial court

 did just that; as explained more fully above, the trial court recounted in detail why

 harsh sanctions were necessary in this case, thereby showing why otherwise

 disfavored sanctions such as default judgment and dismissal were warranted.

¶ 116 Finally, under the disconnect sub-heading, Dunhill argues the August 2019

 Order “is especially problematic because it deemed certain facts ‘established’ even

 though they are contrary to the record evidence,” particularly on the allegation that

 Mr. Lindberg is the alter ego of Dunhill. As part of this argument, Dunhill took issue

 with two facts the trial court ruled established: (1) “that Ms. Lindberg never

 misappropriated funds from Dunhill and never took advantage of her position,” and

 (2) “that Mr. Lindberg is the alter ego of Dunhill.” The problem with both these

 arguments is that Dunhill provides no support for its claim that the trial court could

 not deem certain facts established even though they were contrary to some evidence

 in the record. Rule 37(b)(2) explicitly authorizes a trial court to make an order that

 “any other designated facts shall be taken to be established for the purposes of the

 action” without any caveat that those facts must not be contradicted by at least some

 of the evidence in the record. N.C. Gen. Stat. § 1A-1, Rule 37(b)(2)(a). Given the clear

 statutory authorization of these sanctions, we do not accept Dunhill’s argument that

 the trial court erred because some of the facts it established might conflict with some

 evidence in the record.

 - 80 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

¶ 117 Further, the mere presence of contrary evidence in the record is not surprising

 because our courts exist to resolve disputes about, among other things, evidence.

 Rule 37(b)(2)(a) allows certain facts to be designated as a sanction for disrupting

 discovery, which is part of the process of resolving such disputes. See King v.

 Koucouliotes, 108 N.C. App. 751, 755, 425 S.E.2d 462, 464 (1993) (“The recognized

 primary purpose of discovery ‘is to facilitate the disclosure prior to trial of any

 unprivileged information that is relevant and material to the lawsuit so as to permit

 the narrowing and sharpening of the basic issues and facts that will require trial.’”

 (quoting Bumgarner v. Reneau, 332 N.C. 624, 628, 422 S.E.2d 686, 688–89(1992))

 (emphasis added)). Thus, parties can comply with discovery and resolve their

 disputes through the regular mechanisms of our courts; but, if they fail to comply

 with discovery and are thus subject to Rule 37(b)(2) sanctions, the court can resolve

 those disputes for the parties by establishing certain facts against the party who

 failed to follow the normal process. See N.C. Gen. Stat. § 1A-1, Rule 37(b)(2)(a)

 (providing that a court can designate certain facts as established as a discovery

 sanction). As laid out above, the existence of and choice of discovery sanction fell to

 the trial court because of Dunhill’s repeated, significant discovery violations. If

 Dunhill wanted to argue that the facts in the record supported its contentions, it

 should have complied with the discovery rules and court orders and thereby

 participated in the normal methods of dispute resolution our courts offer. As with

 - 81 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 the other arguments, we reject Dunhill’s argument that the trial court abused its

 discretion by deeming certain facts established when there was some evidence to the

 contrary in the record.

 B. Internal Consistency of the Order

¶ 118 Appellants’ other joint argument is that the August 2019 Order “is internally

 inconsistent.” Specifically, Appellants contend the Order is inconsistent because it

 struck their pleadings, entered default judgment against them, and took facts alleged

 by Ms. Lindberg as true but then still required them to sit for another deposition.

 Appellants also each point to the trial court’s Finding of Fact that additional

 deposition sessions are unlikely to deter them from evading discovery obligations.

¶ 119 “Inconsistent judgments are erroneous.” Graham v. Mid-State Oil Co., 79 N.C.

 App. 716, 720, 340 S.E.2d 521, 524 (1986). As such a judgment cannot be supported

 when it is “actually antagonistic, inconsistent, or contradictory as to material

 matters.” Lackey v. Hamlet City Bd. Of Ed., 257 N.C. 78, 84, 125 S.E.2d 343, 347

 (1962). However, courts “endeavor to reconcile” such inconsistencies when it is

 possible, i.e. when the material matters are not “really inconsistent with each other.”

 Id., 257 N.C. at 84, 125 S.E.2d at 347–48. As such, reviewing courts should first try

 to “harmonize” the “apparently conflicting” portions of a judgment. See Spencer v.

 Spencer, 70 N.C. App. 159, 168, 319 S.E.2d 636, 644 (1984) (harmonizing apparently

 conflicting findings of fact by determining they “clearly reflect[ed]” the trial court’s

 - 82 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 conclusion when read in context). If the reviewing court cannot harmonize the

 conflicting portions, those portions must be vacated and remanded for the trial court

 to cure the inconsistency. See Lackey, 257 N.C. App. at 84, 125 S.E.2d at 348

 (vacating and remanding judgment for inconsistent findings of fact and directing on

 remand that the facts be corrected).

¶ 120 Here, we reject Appellants’ argument that ordering them to sit for new

 depositions after the court found additional deposition sessions would not deter them

 from evading discovery obligations was inconsistent because that Finding of Fact can

 be harmonized with the rest of the judgment. Spencer, 70 N.C. App. at 168, 319

 S.E.2d at 644. Finding 113 about the lack of benefit from additional deposition

 sessions is part of the trial court’s section considering lesser sanctions. Thus, when

 the trial court was saying additional depositions would not be helpful, it was

 justifying its imposition of default judgment as to issues of liability. As a compliment

 to only imposing default judgment as to liability, the trial court “reserved for trial”

 the damages issue as to both Appellants. The order of additional depositions

 therefore applied to damages issues rather than liability. Further, given the purpose

 of sanctions is to “prevent or eliminate dilatory tactics on the part of unscrupulous

 attorneys or litigants,” Essex Group, Inc. v. Express Wire Services, Inc., 157 N.C. App.

 360, 363, 578 S.E.2d 705, 707 (2003), the trial court’s goal in imposing harsh sanctions

 here was to ensure that the depositions on damages do not include such tactics.

 - 83 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 Therefore, any additional depositions are consistent as long as they are limited to the

 issue of damages.

¶ 121 The additional deposition of Mr. Lindberg is appropriately limited to the issue

 of damages. Paragraph 16 of the August 2019 Order requires Mr. Lindberg to sit for

 another deposition and answer questions “that are relevant to any of her [Ms.

 Lindberg’s] counterclaims or damages claims.” Beyond the damages claims, the

 counterclaims also related to damages, specifically compensatory damages from

 Dunhill and imposing a constructive trust over the tennis complex. While the

 counterclaims also involve Ms. Lindberg’s allegation that Mr. Lindberg is an alter ego

 of Dunhill, which would have been covered by the default judgment, we can

 harmonize that portion of the order by reading the word “any” in relation to Ms.

 Lindberg’s counterclaims to mean any counterclaims on the issue of damages. That

 harmonization is similar to Spencer where this Court reconciled apparently

 inconsistent findings by avoiding “unduly literal stress” on a word. 70 N.C. App. at

 168, 319 S.E.2d at 644. Therefore, we find no internal inconsistency as to the

 additional deposition of Mr. Lindberg.

¶ 122 We find, however, internal inconsistency with the order for an additional

 deposition for Dunhill. The August 2019 Order requires Dunhill to sit again for its

 Rule 30(b)(6) “deposition and designate ten days in advance persons for all

 previously-noticed topics who are prepared to testify as to all matters known and

 - 84 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 reasonably available to[] Dunhill regarding each topic in the notice of deposition.”

 (Emphasis in original.) The previously-noticed topics included issues relevant to

 liability alone. For example, Topic 1, as summarized in the same August 2019 Order,

 asked for “[t]he basis for any claims or allegations made by Dunhill against” Ms.

 Lindberg in the lawsuit. Given that the August 2019 Order explicitly dismissed, with

 prejudice, “[a]ll claims for relief asserted by Dunhill in this action,” not all previously-

 noticed topics need to be covered at another deposition. We cannot reconcile this

 inconsistency because the emphasis on “all” in the order makes it clear the trial

 court’s intention to include topics unrelated to damages such as Topic 1. See Lackey,

 257 N.C. at 84, 125 S.E.2d at 347–48 (directing courts to reconcile inconsistencies if

 possible). Therefore, we vacate the paragraph ordering Dunhill to sit for another

 deposition and remand for clarification that Dunhill’s new deposition only cover

 damages.

 C. Order and Privileged Information

¶ 123 Turing to Mr. Lindberg’s individual arguments, he contends the August 2019

 Order erred by ordering him to sit for another deposition and answer all questions

 from Ms. Lindberg’s counsel without objection. Specifically, Mr. Lindberg argues this

 language would require him to answer questions even on topics that should be

 protected by privileges such as attorney-client privilege or the Fifth Amendment’s

 - 85 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 privilege against self-incrimination.

¶ 124 The language of the Order requiring Mr. Lindberg to sit for another deposition

 is as expansive as he claims. Specifically it erroneously requires him “to answer,

 without objection, all questions posed by Mrs. Lindberg’s counsel that are relevant to

 any of her counterclaims or damages claims.” As Mr. Lindberg correctly argues, this

 order could require him to answer questions that are otherwise subject to at least

 attorney-client privilege.10

¶ 125 A court cannot pre-determine that a person cannot claim attorney-client

 privilege as doing so would amount to a forced waiver by the trial court rather than

 the client. See Crosmun v. Trustees of Fayetteville Technical Community College, 266

 N.C. App. 424, 439–40, 832 S.E.2d 223, 236 (2019) (“Critically, it [the attorney-client

 privilege] is the client’s alone to waive, for ‘[i]t is not the privilege of the court or any

 third party.’”) (emphasis and second alteration in original) (quoting In re Miller, 357

 N.C. 316, 338, 584 S.E.2d 722, 788 (2003)). Rather, once the privilege is asserted,

 and only then, the trial court can step in and determine whether the attorney-client

 privilege applies. See In re Miller, 357 N.C. at 336, 584 S.E.2d at 787 (noting “a trial

 court is not required to rely solely on an attorney’s assertion that a particular

 10 Mr. Lindberg also argues his Fifth Amendment privilege against self-incrimination might apply,

 but Ms. Lindberg points out that the criminal charges Mr. Lindberg previously faced resulted in his
 conviction in 2020. Because the possibility of a Fifth Amendment privilege is not dispositive based on
 our analysis of attorney-client privilege, we do not analyze the Fifth Amendment privilege issue.

 - 86 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 communication falls within the scope of the attorney-client privilege”). Thus, the trial

 court erred to the extent its order bars Mr. Lindberg from asserting his attorney-

 client privilege.

¶ 126 Ms. Lindberg highlights the trial court previously overruled many of Mr.

 Lindberg’s attorney-client privilege objections from his first deposition in its August

 2019 Order. Ms. Lindberg is correct in that the order separately bars Mr. Lindberg

 from reasserting attorney-client privilege with respect to those documents, and Mr.

 Lindberg does not challenge that paragraph. The trial court’s error was that it barred

 Mr. Lindberg from asserting new attorney-client privilege objections. Therefore, we

 vacate the paragraph ordering Mr. Lindberg to sit for a new deposition on damages

 and answer all questions without objection. On remand, the trial court will clarify

 that, in his deposition on damages, Mr. Lindberg can assert objections, including

 privileges, that have not been previously overruled.

 D. Proper Notice

¶ 127 Mr. Lindberg’s final solo argument under the choice of sanctions issue heading

 is that he “was not on proper notice.” Specifically, he contends that he only had notice

 for sanctions as to his deposition conduct, not as to the document production issues.

 He also argues that he was not on notice that the sanctions imposed may include

 being precluded from introducing evidence or arguments or that default judgment

 might be entered against him.

 - 87 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

¶ 128 Taking Mr. Lindberg’s second argument first, he presents no authority for his

 contention that the trial court can only impose the exact sanctions requested by the

 other party. Both of the cases he cites involve situations where a party was

 sanctioned for conduct for which it was not on notice. See Griffin v. Griffin, 348 N.C.

 278, 280, 500 S.E.2d 437, 438–39 (1998) (finding party did not have proper notice

 because he was put on notice he was subject to sanctions for one filing but was

 actually sanctioned for a different filing); OSI Restaurant Partners, LLC v. Oscoda

 Plastics, Inc., 266 N.C. App. 310, 315, 831 S.E.2d 386, 390 (2019) (finding party did

 not have proper notice any sanctions would be imposed).

¶ 129 Mr. Lindberg had proper notice of the conduct for which sanctions were sought

 and that these sanctions were under Rule 37(b)(2); there was no need for any specific

 notice that he may be sanctioned by preclusion from introducing evidence and entry

 of default judgment. First, OSI Restaurant Partners explains the notice required is

 “(1) of the fact that sanctions may be imposed, and (2) the alleged grounds for the

 imposition of sanctions.” 266 N.C. App. at 315, 831 S.E.2d at 390 (quoting Megremis

 v. Megremis, 179 N.C. App. 174, 179, 633 S.E.2d 117, 121 (2006)). Notably, OSI

 Restaurant Partners says nothing about the choice of sanctions. Further, the

 sanctions imposed were specifically authorized by Rule 37(b)(2), N.C. Gen. Stat. § 1A-

 1, Rule 37(b)(2), and Ms. Lindberg’s supplemental motion for sanctions indicated she

 was moving for sanctions pursuant to, inter alia, Rule 37(b). The supplemental

 - 88 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 motion also explicitly requested “[t]hat the court enter any further relief it deems just

 and proper pursuant to Rule 37(b) . . . .” Based on that language, Mr. Lindberg was

 on notice that any Rule 37(b) sanction could be imposed. For all these reasons, we

 reject Mr. Lindberg’s argument that he did not have proper notice of the type of

 sanctions to be imposed.

¶ 130 Turning to his other argument, Mr. Lindberg contends he did not receive

 proper notice that he could be sanctioned for the document production. As explained

 above, a person subject to sanctions must have notice “(1) of the fact that sanctions

 may be imposed, and (2) the alleged grounds for the imposition of sanctions” as a

 matter of due process. OSI Restaurant Partners, 266 N.C. App. at 315, 831 S.E.2d at

 390; Griffin, 348 N.C. at 280, 500 S.E.2d at 438 (linking this notice to Fourteenth

 Amendment due process). “Our Court has held that a party sanctioned under Rule

 37 ha[s] [constitutionally adequate] notice of sanctions where the moving party’s

 written discovery motion clearly indicate[s] the party [is] seeking sanctions under

 Rule 37.” OSI Restaurant Partners, 266 N.C. App. at 315, 831 S.E.2d at 390

 (alterations in original) (quoting Megremis, 179 N.C. App. at 179, 633 S.E.2d at 121).

¶ 131 Here, Mr. Lindberg received the notice required by due process via Ms.

 Lindberg’s supplemental motion for sanctions against him. The written

 supplemental motion for sanctions indicated Ms. Lindberg was moving for sanctions

 under, inter alia, Rule 37(b), thereby satisfying OSI Restaurant Partners’s first

 - 89 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

requirement of notice that sanctions may be imposed under Rule 37. Id.

 The supplemental motion also satisfied the second requirement because it

indicated Mr. Lindberg could be subject to sanctions for the document production.

See id. (requiring notice of “the alleged grounds for the imposition of sanctions”). The

supplemental motion for sanctions specifically moved for entry of sanctions against

Mr. Lindberg and Dunhill “for their repeated and willful violations of the Court’s

prior discovery orders and the Rules of Civil Procedure.” In the corrected motion for

sanctions, which Ms. Lindberg specifically “incorporated by reference herein [in the

supplemental motion] as if fully restated,” Ms. Lindberg included four paragraphs

detailing how the 129,000 page document production by Dunhill and Mr. Lindberg

days before Dunhill’s deposition was part of the reasons she was moving for sanctions.

 Further, the supplemental motion requested, among other sanctions, that “neither

Mr. Lindberg nor Dunhill” be allowed to use any of the documents in the 129,000 page

document production. (Emphasis added.) Logically, a sanction barring Mr. Lindberg

from using documents in a certain production would be based on misconduct related

to that production. Given all this information in the supplemental motion for

sanctions against Mr. Lindberg, we determine Mr. Lindberg received proper notice

as to the conduct subject to sanctions. As a result, we reject Mr. Lindberg’s final

argument under the heading choice of sanctions as well.

 VII. Forensic Examination

 - 90 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

¶ 132 Finally, Appellants both incorporate the arguments made in their prior appeal

 that challenged the “ordered forensic examination” on the basis that it “was an

 inappropriate invasion of privacy.” As Appellants note and as we explained more

 fully above, the ruling in the prior appeal directed us to consider the issues in that

 appeal when we decided the sanctions issues in this appeal. Dunhill I at *12.

 Therefore, we address the issue.

¶ 133 Before potentially reaching the merits of the discovery issues raised in the

 prior appeal, we note the prior appeal carried mootness concerns. As the prior panel’s

 opinion summarized, Ms. Lindberg filed a motion to dismiss the appeal, arguing “the

 appeal is moot because she has filed a ‘Notice of Withdrawal of Forensic Search

 Request’ with the trial court, removing the underlying motion to compel discovery.”

 Dunhill I at *11. Ms. Lindberg also filed a document in the prior appeal arguing “that

 the trial court’s imposition of a final sanctions order on 1 August 2019,” i.e. the

 sanctions order on appeal here, mooted the dispute over the forensic examination

 discovery order. Dunhill I at *11. Based on these arguments and the concerns of the

 prior panel,11 we examine mootness and ultimately conclude the forensic examination

 issue is moot.

 11 Even if this history of mootness concerns did not exist, we could have addressed the issue ex mero

 motu. See State ex rel. Rhodes v. Gaskill, 325 N.C. 424, 426, 383 S.E.2d 923, 925 (1989) (dismissing
 appeal ex mero motu for mootness).

 - 91 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

¶ 134 “A case is ‘moot’ when a determination is sought on a matter which, when

 rendered, cannot have any practical effect on the existing controversy.” Roberts v.

 Madison County Realtors Ass’n, Inc., 344 N.C. 394, 398–99, 474 S.E.2d 783, 787

 (1996). Put another way, “[w]henever, during the course of litigation it develops that

 the relief sought has been granted or that the questions originally in controversy

 between the parties are no longer at issue, the case should be dismissed, for courts

 will not entertain or proceed with a cause merely to determine abstract propositions

 of law.” In re Peoples, 296 N.C. 109, 147, 250 S.E.2d 890, 912 (1978). In our state

 courts, mootness is not a jurisdictional issue “but rather represents a form of judicial

 restraint.” Id. Thus, unlike jurisdiction, “the issue of mootness is not determined

 solely by examining facts in existence at the commencement of the action. If the

 issues before a court or administrative body become moot at any time during the

 course of the proceedings, the usual response should be to dismiss the action.” Id.,

 296 N.C. at 148, 250 S.E.2d at 912; see also Comer v. Ammons, 135 N.C. App. 531,

 536, 522 S.E.2d 77, 80 (1999) (“An appeal which presents a moot question should be

 dismissed.”).

¶ 135 Applying the mootness doctrine here, the August 2019 Order mooted the

 forensic examination issue because it granted all the relief sought via the forensic

 examination. In re Peoples, 296 N.C. at 147, 250 S.E.2d at 912. To understand how

 the August 2019 Order granted all the relief requested without actually granting a

 - 92 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 forensic examination, we review the original reasoning behind the request, as limited

 by the June 2018 Order, for a forensic examination.

¶ 136 Appellee sought the forensic examination for purposes of discovering

 documents relevant to liability issues. First, the motion to compel discovery that led

 to the forensic inspection order indicated the forensic examination would help prove

 the spoliation claim as laid out in Ms. Lindberg’s Amended Counterclaims and Third-

 Party Complaint:

 Upon information and belief, Mr. Lindberg and Dunhill
 have intentionally attempted to destroy evidence from
 computers and electronic devices that is relevant to this
 matter. The spoliation of evidence by Mr. Lindberg and
 Dunhill was set out in the pleadings in this matter in Mrs.
 Lindberg’s Amended Counterclaims and Third-Party
 Complaint. For example, upon information and belief, Mr.
 Lindberg and Dunhill destroyed emails and computer files
 maintained by Mr. Lindberg’s companies soon after Mr.
 Lindberg took out the Ex Parte Domestic Violence
 Protective Order and restricted her access to email servers.
 Requests for Inspection 23 and 24 to Dunhill and Requests
 for Inspection 23 and 24 to Greg Lindberg seek to inspect
 the computers, drives and devices of Mr. Lindberg and
 Dunhill, but they have refused to allow for this inspection.
 Mrs. Lindberg respectfully requests that the Court order
 such a forensic computer inspection.

¶ 137 Looking in turn at Ms. Lindberg’s Amended Counterclaims and Third-Party

 Complaint, the spoliation claim related to the deletion of emails that corroborated

 Ms. Lindberg’s claim that two pieces of real estate were gifted to her as her sole

 property:

 - 93 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 164. Mrs. Lindberg is informed and believes that Mr.
 Lindberg has spoliated critical material evidence,
 including many emails exchanged between them,
 corroborating that he gifted both the Key West House and
 tennis complex to her as her sole property. Specifically,
 Mrs. Lindberg’s email account in 2017 was maintained on
 a server controlled exclusively by Mr. Lindberg. Mr. and
 Mrs. Lindberg exchanged numerous emails regarding the
 acquisition of the Key West House as her birthday gift and
 the gift of the tennis complex to her.
 ...
 166. Mr. Lindberg deleted Mrs. Lindberg’s emails at some
 time following his involuntary commitment of Mrs.
 Lindberg in May or June, 2017. This purposeful deletion of
 Plaintiffs emails constitutes spoliation of material evidence
 which Mr. Lindberg has deleted to avoid confirmation that
 the Key West House and the Tennis complex were gifted to
 Mrs. Lindberg.

As part of her prayer for relief, Ms. Lindberg sought constructive trust over one of

those pieces of property, the tennis complex. While Ms. Lindberg’s pleading mentions

a Key West house, that property was not at issue in this lawsuit. Rather, as clarified

at the June 2018 hearing on the motion to compel, the Key West house was, at least

at that time, part of a separate lawsuit in Florida.12 Because the June 2018 Order

limited the forensic examination to, inter alia, “[a] determination as to whether

emails or text messages dealing with real estate holdings subject to dispute in this

12 An earlier version of Ms. Lindberg’s third-party complaint and counterclaim also sought control of

the Florida house, but that was not included in the amended version of that document that we discuss
above. See Dunhill I at *3 (summarizing the claims in the original and amended third-party complaint
and counterclaim pleadings).

 - 94 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 lawsuit exist or ever existed, and producing copies of the same for the parties,”

 (emphasis added), the trial court implicitly denied the request as to the Key West

 house, so we need not further examine that portion of the request. Based on the

 motion to compel and its references to the pleadings, the forensic examination sought

 to advance Ms. Lindberg’s spoliation argument and provide evidence to support her

 claim the tennis complex was gifted to her and should be placed in a constructive

 trust.

¶ 138 The purposes for the forensic examination advanced by Ms. Lindberg at the

 hearing on the motion to compel are broadly similar. At the hearing, Ms. Lindberg’s

 counsel repeatedly emphasized the forensic examination sought to uncover emails

 that would support her spoliation claim and show the Florida house and the tennis

 complex were gifts to her personally. Ms. Lindberg also raised two new purposes for

 the forensic examination at the hearing. First, she said the emails she believed the

 forensic examination would uncover would also prove the allegation “on the money

 being her money.” This appears to relate to Ms. Lindberg’s denial of Dunhill’s claims

 that she took funds from Dunhill, which was the animating claim in this suit. See

 Dunhill I at *3 (Dunill claiming Ms. Lindberg took funds from it and Ms. Lindberg

 “denying various allegations of Dunhill”).

¶ 139 The second new purpose for the forensic examination was that it would uncover

 emails “specifically related to the yacht claim.” This purpose relates to Ms. Lindberg’s

 - 95 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 claim for indemnity as to a deposit on a yacht vacation that Ms. Lindberg claims she

 made on behalf of Mr. Lindberg.

¶ 140 With the exception of the Florida house, the June 2018 Order’s grant of the

 forensic examination confined its scope to those purposes:

 5. Dunhill Holdings LLC and Greg Lindberg shall make the
 server or any electronic device housing, hosting, or storing
 the outlook email account used by the parties available for
 a forensic examination, but that inspection and
 examination is limited to:
 a. A determination as to whether emails or text
 messages between Mr. Lindberg and Mrs. Lindberg
 exist or ever existed, and producing copies of the
 same for the parties;
 b. A determination as to whether emails or text
 messages dealing with real estate holdings subject
 to dispute in this lawsuit exist or ever existed, and
 producing copies of the same for the parties;
 c. Whether any of those email or text messages, if
 there were any, have been intentionally deleted and,
 if deleted, the circumstances of any deletion and
 whether or not they can be recovered.
¶ 141 The first paragraph granting the forensic examination appears to encompass

 all the listed purposes. The second paragraph relates to the tennis complex as the

 real estate holding subject to dispute in this lawsuit. The final paragraph relates to

 spoliation, i.e. “a party’s intentional destruction of evidence in its control before it is

 made available to the adverse party . . . .” Holloway v. Tyson Foods, Inc., 193 N.C.

 App. 542, 547, 668 S.E.2d 72, 75 (2008) (quoting Red Hill Hosiery Mill, Inc. v.

 MagneTek, Inc., 138 N.C. App. 70, 78, 530 S.E.2d 321, 328 (2000)).

 - 96 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

¶ 142 All these purposes, as defined by the June 2018 Order, related to issues of

 liability between the parties. The money, tennis complex, and yacht purposes all

 relate directly to proving claims or defenses made by the parties. Specifically, the

 emails that would be uncovered by the forensic examination “would prove every

 single allegation about these promises [Mr. Lindberg] made to [Ms. Lindberg]” on the

 tennis complex and the money Dunhill claims Ms. Lindberg improperly took. The

 lost emails could help prove the yacht claim according to Ms. Lindberg’s counsel.

 Notably, all three of those claims featured a dispute on liability, i.e. whether promises

 were made, etc., rather than the amount of money the claim would be worth. The

 money issue was a defense against Dunhill’s claim Ms. Lindberg took its funds, so

 Dunhill would know the amount.

¶ 143 As to the tennis complex, Ms. Lindberg seeks a constructive trust rather than

 monetary damages. And as to the yacht claim, Ms. Lindberg seeks indemnity “for all

 amounts she is required to pay” if found liable for the yacht rental. Thus, none of

 these claims feature a dispute as to damages. Ms. Lindberg either wins on liability

 and keeps the money she received from Dunhill and receives a constructive trust and

 indemnification, or she loses and does not.

¶ 144 Finally, the spoliation claim could only possibly relate to liability, not damages,

 because “the spoliation of evidence principle is an evidentiary matter” that “can give

 rise to an inference that the evidence destroyed would injure its (the party who

 - 97 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 destroyed the evidence) case.” Holloway, 193 N.C. App. at 547, 668 S.E.2d at 75–76

 (in the second part of the quote, quoting Red Hill Hosiery Mill, 138 N.C. App. at 78,

 530 S.E.2d at 328). In other words, spoliation is not a claim that allows for recovery

 of damages. Thus, the spoliation could only go to liability when the evidence allegedly

 spoliated would prove Ms. Lindberg’s arguments on liability. Because the forensic

 examination would only provide evidence relevant to questions of liability, it would

 only have a practical effect on the controversy if liability were still at issue. Roberts,

 344 N.C. at 398–99, 474 S.E.2d at 787.

¶ 145 The August 2019 sanctions order renders the forensic examination request and

 order moot because it resolves all liability issues in favor of Ms. Lindberg.

 Specifically, it dismisses with prejudice “[a]ll claims for relief asserted by Dunhill in

 this action” and it enters judgment by default against both Dunhill and Mr. Lindberg,

 and in favor of Ms. Lindberg, “on the issue of liability for each of” Ms. Lindberg’s

 claims in the action.

¶ 146 It also established as true all facts related to Dunhill’s claim against Ms.

 Lindberg for improperly taking funds. Finally, the August 2019 Order specifically

 bars Dunhill and Mr. Lindberg from opposing at trial the issue of liability in Ms.

 Lindberg’s favor on her claims against them. Since the August 2019 Order has

 already determined all issues on liability, the relief Ms. Lindberg sought via the

 - 98 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

 forensic examination has been granted, and the provisions regarding forensic

 examination are moot. In re Peoples, 296 N.C. at 147, 250 S.E.2d at 912.

¶ 147 Appellants’ only response to Ms. Lindberg’s argument in the prior appeal that

 the sanctions order mooted the forensic examination issue was that “the referenced

 order has been appealed.” As explained above, we have now upheld the relevant parts

 of the sanctions order, i.e. the parts on liability, against all of Appellants’ arguments,

 so Appellants’ prior response has no persuasive force. The merits of the forensic

 examination issue are not addressed and are dismissed as moot.

 VIII. Conclusion

¶ 148 The trial court did not abuse its discretion in (1) sanctioning Appellants for

 their document production behavior, (2) sanctioning Appellants for their deposition

 misconduct, and (3) choosing sanctions, except as to two sanctions as described below

 Those portions of the sanctions order are affirmed.

¶ 149 We vacate the August 2019 Order’s sanctions in paragraphs 13 and 16 and

 remand to the trial court to ensure any new depositions ordered in those paragraphs

 are limited to the issue of damages only and do not bar a party from asserting

 objections, particularly asserting attorney-client or other rights and privileges, not

 previously ruled upon. Finally, because we affirm the sanctions deciding all issues of

 liability in favor of Ms. Lindberg, we hold the provisions regarding forensic

 examinations are moot.

 - 99 -
 DUNHILL HOLDINGS, LLC V. LINDBERG

 [do not modify or remove this line]

 Opinion of the Court

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

Judges TYSON and ZACHARY concur.

 - 100 -